**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **(1) STATE FARM FIRE AND** | ) | |
| **CASUALTY COMPANY,** | ) | |
| **an Illinois Corporation,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 19-cv-630-CVE-JFJ** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **(1) SWEET APPETIT, INC.,** | ) | |
| **an Oklahoma Corporation;** | ) | |
| | ) | |
| **(2) LUDGER SCHULZ,** | ) | |
| | ) | |
| **(3) SGN FOODS, LLC, an** | ) | |
| **Oklahoma Limited Liability** | ) | |
| **Company,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**DEFENDANT SWEET APPETIT, INC.'S MOTION FOR SUMMARY ADJUDICATION
AND BRIEF IN SUPPORT**

---

Respectfully Submitted,

**RIGGS, ABNEY, NEAL, TURPEN,
ORBISON & LEWIS**

Wm. Gregory James, OBA #4620
Thomas M. Askew, OBA #13568
Sharon K. Weaver, OBA #19010
502 West 6th Street
Tulsa, OK  74119-1010
(918) 587-3161
(918) 587-9708 (Facsimile)
gjames@riggsabney.com
taskew@riggsabney.com
sweaver@riggsabney.com

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

SAI'S STATEMENT OF UNDISPUTED MATERIAL FACTS ...................................................2

ARGUMENTS AND AUTHORITIES.......................................................................................11

    I.  SUMMARY JUDGMENT STANDARD  .........................................................................11

    II.  SAI IS ENTITLED TO SUMMARY ADJUDICATION ON PLAINTIFF'S
       REQUEST FOR DECLARATORY JUDGMENT .........................................................12

    III.  SGN BROUGHT CLAIMS AGAINST SAI IN THE UNDERLYING
       ACTION THAT TRIGGER COVERAGE.......................................................................14

       A.  SGN's Claims are Based in Trade Dress Allegations...................................15

CONCLUSION.....................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

## <u>CASES:</u>

*Above It all Roofing & Construction v. Security National Insurance Company*,
285 F. Supp. 3d 1224 (N.D. Okla. 2018) ............................................................... 13-14

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998) ........................................11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................... 11

*Brunswick Corporation v. Spinit Reel Company*, 832 F.2d 513 (10th Cir. 1987) .........................16

*Celotx Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................11

*Cincinnati Insurance Companies v. Pestco, Inc.*, 374 F. Supp. 2d 451 (W.D. Penn. 2004) .....2, 17

*Great Lakes Reinsurance UK PLC v. In & Out Fashion, Inc.*,
2016 U.S. Dist. LEXIS 80656 (C.D. Calif. 2016) .................................................14, 16

*Harpin v. Oakley Custom Homes, Inc.*, 232 F.3d 901 (10th Cir. 2000) ........................................12

*Haworth v. Jantzen*, 2006 OK 35, 172 P.3d 193 ............................................................13

*Max True Plastering Co. v. United States Fidelity and Guaranty Co.*,
1996 OK 28, 912 P.2d 861 ................................................................................12

*Neustrom v. Union Pacific R.R. Co.*, 156 F.3d 1057 (10th Cir. 1998) ..........................................11

*Orthopedic Resources, Inc. v. Nautilus Insurance Company*,
654 F. Supp. 2d 1307 (N.D. Okla. 2009) ..............................................................13, 18

*Porter v. Oklahoma Farm Bureau Mutual Insurance Company*,
2014 OK 50, 330 P.3d 511 ................................................................................12, 13

*Salt Optics, Inc. v. Jand, Inc.*, 2011 U.S. Dist. LEXIS 156237 (C.D. Calif. 2011) ......................16

*Serra v. Personal Representative of Estate of Broughton*,
2015 OK 82, 364 P.3d 637 ................................................................................12

*Simms v. Okla. ex rel. Dep't of Mental Health and Substance Abuse Servs.*,
165 F.3d 1321 (10th Cir. 1999) ..........................................................................11

*Wilson v. Travelers Ins. Co.*, 1980 OK 9, 6025 P.2d 1327 ..........................................................13

**STATUTES:**

Oklahoma Statute title 15, § 157.................................................................................................13

**RULES:**

Federal Rules of Civil Procedure 56..............................................................................................1

Federal Rules of Civil Procedure 56(a) .......................................................................................11

Federal Rules of Civil Procedure 56(c) .......................................................................................11

Local Civil Rule 56.1 ....................................................................................................................1

COMES NOW the Defendant, Sweet Appetit, Inc. ("SAI" or "Sweet Appetit"), pursuant to Fed. R. Civ. P. 56 and Local Rule LCvR 56.1, and moves this Court for summary adjudication in its favor as to Plaintiff, State Farm Fire and Casualty Company's ("State Farm") claims.  No material facts are in dispute and no reasonable, differing interpretations favoring State Farm exist from the undisputed facts.  Thus, SAI is entitled to summary adjudication as a matter of law.

## INTRODUCTION

In this declaratory judgment action State Farm seeks to avoid its contractual obligation to Defend SAI in Tulsa County District Court Case No. CJ-2019-662 (the "Underlying Action"), which arises out of the use of "Ludger's" by two different businesses, SGN Foods, LLC ("SGN") and SAI.   Judge LaFortune, who presided over the Underlying Action, entered a temporary restraining order prohibiting SAI from providing pick-up, delivery and catering food services finding that SGN has the sole and exclusive right to offer those services in conjunction with the "Ludger's" name.  Both SGN and SAI have the right to use "Ludger's" in their advertising because each purchased the right to do so from Ludger Schulz of The Black Forest Café ("TBFC").  Since both possessed the right to use the name "Ludger's" in advertising, its use by either cannot be an "unauthorized use of another's name."   State Farm argues that coverage is excluded under the Policies at issue. The applicability of the exclusions is in dispute.   Even if the Court were to conclude that exclusions for infringement of intellectual property rights do apply, the Policies carve from those exclusions infringement of "trade dress" and "slogan."

At the very core of SGN's claims against SAI is SAI's use of "Ludger's" (not "Ludger's Catering").  A fair reading of SGN's pleadings, reveals that it is SAI's use of "Ludger's" with "catering" [but never used together] which is the lynchpin of SGN's claim against SAI.  Such use

1

is as much of a basis for SGN to claim that SAI wrongfully used one of SGN's marketing or advertising ideas (i.e., advertising a web menu for catering) for which coverage under the Policies exists.  *Cincinnati Insurance Companies v. Pestco, Inc.*, 374 F. Supp. 2d 451, 459 (W.D. Penn. 2004) ("Because trade dress may encompass marketing or packaging design to draw attention to a product, it certainly may constitute an advertising idea or a style of doing business.").  Or, SAI's use of "Ludger's" in its web advertising (which it had every right to do), along with the word "catering," provides an overall look, appearance or feel (thus "trade dress"), which SGN claims has caused customer confusion and damage to SGN's good will.  It is clear under the Policies that a claim for infringement of "trade dress" is covered.  Even though SGN does not explicitly sue SAI for trade dress infringement, coverage exists so long as the allegations against SAI reasonably give rise to a claim for trade dress infringement.     SAI maintains that allegations made against it by SGN, together with other information available to State Farm, favors a declaration by the Court that State Farm should continue to provide SAI a defense of SGN's claims against it in the Underlying Action.  Where, as here, there is the potential for coverage under the Policies for one or more of SGN's claims against SAI, the law requires that State Farm defend its insured, SAI, from all claims.

<u>**SAI's STATEMENT OF UNDISPUTED MATERIAL FACTS**</u>

1.      Prior to 2009, TBFC, owned by Ludger Schulz, operated a business in Tulsa that consisted of (i) a bakery and (ii) a catering and dining room business.  In 2009, TBFC entered into a Purchase and Sale Agreement with SGN by which SGN purchased the assets, trade name, and ongoing business of the dining room.  This Agreement expressly <u>excluded</u> the bakery and its trade

name, "Ludger's Cakes."  (Exhibit "1", Purchase and Sale Agreement between TBFC and SGN, Art. 1, 1.01. (l) [Doc. 2-11]).

2.      SGN did not purchase the ongoing bakery business or the trade name Ludger's Cakes. (Exhibit "2", Original Petition, ¶ 14 [Doc. 2-18]).

3.      The purchase of some but not all of TBFC assets created potential for confusion because of SGN's and TBFC's rights to use "Ludger's" in their respective businesses. (See, Exhibit "1", Purchase and Sale Agreement between TBFC and SGN, excluding Ludger's Cakes from the sale to SGN [Doc. 2-11]).

4.      SAI was not a party to and had no involvement with the Purchase and Sale Agreement between SGN and TBFC.  (Exhibit "1", Purchase and Sale Agreement between TBFC and SGN [Doc. 2-11]).

5.      In 2010, SAI purchased the ongoing bakery business from TBFC, including all assets and the trade name, and operated under the "Ludger's Cakes" name and the derivative name "Ludger's Bavarian Cakery."  Nothing in SAI's agreement with TBFC limits the type of business that could be operated by SAI under its lawful name. (Exhibit "2", Asset Purchase and Sale Agreement between TBFC and SAI).

6.      Ludger's Cakery has distinctive logos, a separate business location, a distinctive website, and other advertising material clearly identifying Ludger's Cakery/Ludger's Bavarian Cakery as a distinct and separate business from SGN's Ludger's Catering and Dining Room. (Exhibit "3", Transcript of hearing on Temporary Injunction held in Tulsa County District Court Case No. CJ-2019-662 on March 27 and 28, 2019 ("TI hearing transcript"), p. 208)).

3

7.      Part of SAI's business includes the sale of non-cake food items in its café/store and for pickup and delivery.  On its website, SAI added a page that advertised "Breakfast Bundles" and "Lunch Bundles," which consisted of trays of breakfast sandwiches or boxed lunches that were available for pickup or delivery. (Exhibit "3", TI hearing transcript, p. 142).

8.      On February 24, 2019, SGN filed suit against SAI, only, claiming that Ludger's Cakery's use of the generic term catering menu on its website was a violation of the Oklahoma Deceptive Trade Practices Act. (Exhibit "4", Original Petition, Count II [Doc. 2-18]).

9.      SGN claims to be the owner of the distinctive "Ludger's Catering and Events" trade name, registered on October 3, 2014 with the Oklahoma Secretary of State. (Exhibit "4", Original Petition, ¶ 6 [Doc. 2-18]).

10.     SGN claims it has expended considerable resources promoting its catering services under both the "Ludger's Catering and Dining Room" and "Ludger's Catering and Events," trade names (collectively "LUDGER'S CATERING") and further claims that members of the public readily recognize the LUDGER'S CATERING trade names and the goodwill they symbolize. (Exhibit "4", Original Petition, ¶ 6 [Doc. 2-18]).  In fact, SAI never used "Ludger's Catering" in its web advertising. (See Exhibit "5", web advertised menu which was attached as an exhibit to SGN's Second Amended Petition [Doc. 2-16]).

11.      SGN alleged that SAI was engaging in "catering" by using the term catering in its menu advertised on its website and that it had misappropriated SGN's trade name and attempted to pass off its food services as those of SGN. (Exhibit "4", Original Petition, ¶¶ 24, 25 [Doc. 2-18]).

12.     SGN also alleged that SAI interfered with SGN's business causing a loss of catering customers and that SAI's advertising of competing catering services and products interfered with SGN's prospective economic advantage.  (Exhibit "4", Original Petition, Count 1, ¶ 21 [Doc. 2-18]).

13.     In April of 2019, Judge LaFortune granted a temporary injunction in the Underlying Action. (Exhibit "6", [Doc 5-20]). Although SAI denies that its use of "Ludger's," which it purchased the right to use, was wrongful or unlawful in any way, implicit in Judge LaFortune's findings and Order regarding such use is that "Ludger's" and "catering" potentially impart to customers the appearance or look and feel of SGN and its catering services (see Exhibit "6", [Doc 5-20]).

14.     Judge's LaFortune's order granting the temporary injunction is an interlocutory order which is currently on appeal to the Oklahoma Supreme Court in Case No. 117984.  (See Exhibit "7", Defendant/Appellant's Brief–in–Chief, [Doc 12.1]).

15.     On May 29, 2019, SGN amended its Original Petition and added Ludger Schulz as a defendant along with SAI. (Exhibit "8", Second Amended Petition [Doc. 2-10]).

16.     SAI maintained insurance coverage with State Farm pursuant to Policy No. 96-BS-E946-7 (See State Farm's Exhibits, [Docs. 5-1 through 5-6] (as to Policy No. 96-BL-R081-7, from September 15, 2011 through August 29, 2017,) and [Docs. 5-7 to 5-9] (as to Policy No. 96-BS-E946-7, from August 29, 2020); and, SAI's Answer to Amended Complaint,  ¶ 6 [Doc. 12]).

17.     Subject to its terms and conditions, Policy Number 96-BS-E946-7 extends

coverage to the "insured" for "'personal and advertising injury' caused by an offense arising out of your business." (See State Farm's Amended Complaint, ¶ 138 [Doc. 5]; Policy Number 96-BS-E946-7, Businessowners Coverage Form, CMP-4100, p. 23, ¶ 2. b. [Doc. 5-23]).

18. Policy Number 96-BS-E946-7 defines the term "personal and advertising injury" as follows:

**18.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of privacy, of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner of material that violates a person's right to privacy;

**f.** The use of another's advertising idea in your "advertisement", or

**g.** infringing upon another's copyright, trade dress or slogan in your "advertisement."

(See Amended Complaint, ¶ 139 [Doc. 5]; and Policy Number 96-BS-E946-7, Businessowners Coverage Form, CMP-4100, p. 36, ¶ 18, [Doc 5-23]).

19. Policy Number 96-BS-E946-7 was amended effective April 9, 2018. The amendment included adding Policy Endorsement CMP-4561.1 which modified the Policy definition of "personal and advertising injury" in relevant part as follows:

<u>**CMP-4561.1 POLICY ENDORSEMENT**</u>

This endorsement modifies insurance provided under the following:
BUSINESSOWNERS COVERAGE FORM
***
**e. SECTION II – DEFINITIONS** is amended as follows:
***

> **(3)** Paragraphs **18.f** and **g.** of "personal and advertising injury" are replaced by the following:

>> **f.** The use of another's advertising idea in your "advertisement";

>> **g.** Infringing upon another's trade dress or slogan in your "advertisement", or

>> **h.** Infringement of another's copyright, patent, trademark, or trade secret.

(See [Doc 5], ¶ 140, Policy Number 96-BS-E946-7, CMP–4561.1 Policy Endorsement, p. 4-5, ¶ e. (3), [Doc 5-24]).

> 20.    The Policy defines the term "advertisement" as follows:

**1.**    "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

> **a.**    Notices that are published include material placed on the internet or on similar electronic means of communication; and

> **b.**    Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

(See [Doc 5-23], Policy Number 96-BS-E946-7, Businessowners Coverage Form, CMP-4100, p. 35, ¶ 1; also see Amended Complaint, ¶ 141 [Doc. 5]).

7

21.     State Farm's reliance on the following exclusions in the policy is misplaced:

_____

**Section II – Exclusions**

Applicable to **Coverage L – Business Liability**, this insurance does not apply to:

*        *        *

**17. Personal And Advertising injury**

> **a.** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";
>
> ***
> **e.** Arising out of breach of contract, except an implied contract to use another's advertising idea in your "advertisement";
>
> ***
> **m.** Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags.

(See [Doc 5-23], Policy Number 96-BS-E946-7, Businessowners Coverage Form, CMP-4100, p. 28, ¶ 17).

22.     SGN avers that it acquired" the right to operate in perpetuity and exclusively the catering and private dining room establishment of Ludger's Catering," along with the "goodwill of the business, including . . . any and all . . . **trade dress** . . . and the exclusive right to continue operations of that portion of the business. . ." (emphasis added).   (SGN's Second Amended Petition, ¶ 40 Exhibit "8" [Doc. 2-10]; Purchase and Sale Agreement between SGN and TBFC Exhibit "1" [Doc. 2-11]).

23.     Oklahoma's Deceptive Trade Practices Act, Okla. Stat. tit. 78 §§ 51 et seq, states

A person engages in a deceptive trade practice when in the course of business, vocation, or

occupation, the person:

1. Passes off goods or services as those of another;

2. Knowingly makes a false representation as to the source, sponsorship, approval, or

certification of goods or services;

3. Knowingly makes a false representation as to affiliation, connection, association with,

or certification by another;

*        *        *

24.     SGN claims that SAI's Ludger's Bavarian Cakery website falls within the ODTPA

prohibitions because it causes confusion among current and potential customers of SGN by SAI's

"offering and performing catering services" in association with "LUDGER'S," which is a

misappropriation of "SGN's rightful use of Ludger's in association with catering services." (See

Exhibit "8", SGN's Second Amended Petition, ¶¶ 84 and 85 [Doc. 2-10]).[1]

25.     SGN argued at the injunction hearing in the underlying case that its claims include

infringement of trade dress and goodwill, which SGN asserts it bought in 2009 in the transaction

with Ludger Schulz/TBFC.  (TI hearing transcript, Ex. "3" at pp. 182-183; 212-213); (Ex. "8",

SGN's Second Amended Petition at ¶¶ 8 and 40 [Doc. 2.10]).

---

[1] In essence, SGN complained about how SAI's website looked with the name "Ludger's" and the word "catering" which is trade dress infringement.

26.     Assuming SAI engaged in an unlawful practice, which is denied, but did so "**without knowledge that**" the practice would violate the rights of another and would inflict "personal and advertising injury," there would be coverage for personal and advertising injury. (See Undisputed Fact No. 22 above).

27.     Oklahoma's Uniform Jury Instruction No. 24.1, setting forth the elements of "Interference with Contract" (a claim asserted against SAI by SGN in Count 1, of SGN's Second Amended Petition, [Doc 2.10]) states:

### Instruction No. 24.1

### Interference with Contract --- Elements

[Plaintiff] claims that [he/she/it] had a contract with [Third Party] in which they had agreed to [Describe the terms of the contract]. [Plaintiff] also claims that [Defendant] intentionally and wrongfully interfered with this contract, and that [he/she/it] suffered damages as a direct result. In order to win on the claim of intentional interference with a contract, [Plaintiff] must show by the weight of the evidence that:

1. [Plaintiff] had a contract with [Third Party];
2. [Defendant] knew [or under the circumstances reasonably should have known] about the contract;
3. [Defendant] interfered with the contract [or induced the Third Party to breach the contract, or made it impossible for the contract to be performed];
4. [Defendant]'s conduct was intentional;
5. [Defendant] used improper or unfair means; and
6. [Plaintiff] suffered damages as a direct result of [Defendant]'s actions.

(OUJI-CIV, 24.1).  SGN's claim for interference with contract and prospective business arises out of SAI advertising a "catering" menu on its website along with the name, "Ludger's Bavarian Cakery." (SGN's Second Amended Petition, ¶¶ 31 and 32, Exhibit "8" [Doc. 2-10]).

28.     Information is available to State Farm indicating that SAI's Allison Dickens did not add the word "catering" to SAI's website with knowledge that it would violate any rights SGN

had or that it would cause personal and advertising injury to SGN. [See Exhibit "3", TI hearing

transcript, p. 16 (testimony indicates Dickens was aware of the sale to SGN but not the terms of

the purchase and sale agreement); p. 169 (testimony indicates that "we [SAI/Dickens] would never

have intentionally infringed on one of your [SGN's] clients"); p. 179 (testimony indicates, "I

[SAI/Dickens] never would have dreamed a title of a menu would be infringement on anything.")]

<u>**ARGUMENTS AND AUTHORITIES**</u>

**I.  <u>SUMMARY JUDGMENT STANDARD</u>**

The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(a). 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is

"material" if under the substantive law it is essential to the proper disposition of the claim. *Adler*

*v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "Only disputes over facts that might

affect the outcome of the suit under the governing law will properly preclude the entry of summary

judgment*." Neustrom v. Union Pacific R.R. Co*., 156 F.3d 1057, 1066 (10th Cir. 1998) (internal

citations and quotations omitted).

In deciding whether summary judgment is appropriate, the Court views the evidence in the

light most favorable to the non-movant and draws all reasonable inferences in the non-movant's

favor. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986); *Simms v. Okla. ex rel. Dep't*

*of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). However,

"the non-movant has a burden of doing more than simply showing there is some metaphysical

doubt as to the material facts." *Neustrom*, 156 F.3d at 1066.  The relevant inquiry is whether the

evidence presents a sufficient disagreement as to require submission to a jury or whether it is so

11

one-sided that one party must prevail as a matter of law.  *Id.*  After reviewing the facts, arguments, and authorities herein it will be clear that SAI is entitled to judgment as a matter of law in its favor. SGN has pled claims that trigger State Farm's duty to defend in the underlying action.

## II.  SAI IS ENTITLED TO SUMMARY ADJUDICATION ON PLAINTIFF'S REQUEST FOR DECLARATORY JUDGMENT

The federal Declaratory Judgment Act has been characterized by the United States Supreme Court as an enabling Act, "which confers a discretion on the courts rather than an absolute right upon the litigant."  *Harpin v. Oakley Custom Homes, Inc.*, 232 F.3d 901, *1 (10th Cir. 2000). District courts have discretion in deciding whether and when to entertain an action under the Declaratory Judgment Act.  *Id.*  "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."  *Id.*  This Court may, therefore, in its discretion, refuse to consider State Farm's request for declaratory judgment.  In the event the Court determines such claim should be considered, SAI is entitled to summary judgment on State Farm's claim for declaratory judgment for the following reasons.

"Oklahoma law involving the interpretation of insurance contracts is well settled."  *Porter v. Okla. Farm Bureau Mutual Insurance Company*, 2014 OK 50, ¶ 12, 330 P.3d 511, 515.  Courts look to the plain and ordinary meaning of the policy language when the policy provisions are clear, consistent, and unambiguous to determine and give effect to the parties' intent.  *Id.*  The interpretation of an insurance contract and whether it is ambiguous is determined by the court as a matter of law.  *Serra v. Personal Representative of Estate of Broughton*, 2015 OK 82, ¶ 10, 364 P.3d 637, 641; *Max True Plastering Co. v. United States Fidelity and Guaranty Co*., 1996 OK 28, 912 P.2d 861, 869.  When an insurer desires to limit its liability under a policy, it must use language

which clearly and distinctively reveals its stated purpose. *Serra*, 2015 OK 82 at ¶ 10, 364 P.3d at 642.

If the language is susceptible to two constructions before applying the rules of construction, then the policy is ambiguous. *Porter*, at ¶ 13, 330 P.3d at 515.  However, "neither forced nor strained construction will be indulged, nor will any provision be taken out of context and narrowly focused upon to create and then construe an ambiguity so as to import a [more] favorable consideration to either party than that expressed in the contract." *Id.*; Okla. Stat. tit. 15, § 157 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others."). "Insurance contracts are contracts of adhesion," which are interpreted most strongly against the party that prepared the contract. *Wilson v. Travelers Ins. Co.*, 1980 OK 9, ¶ 8, 605 P.2d 1327, 1329. When an insurance contract provision is ambiguous, words of inclusion will be liberally construed in favor of the insured, and words of exclusion will be strictly construed against the insurer.  *Haworth v. Jantzen,* 2006 OK 35, ¶ 17, 172 P.3d 193, 197; *Orthopedic Resources, Inc. v. Nautilus Insurance Company*, 654 F. Supp. 2d 1307, 1312 (N.D. Okla. 2009) (recognizing that exclusions are construed strictly against the insurer).   Because of the ambiguity, it should be given the definition which favors coverage. *Haworth,* 2006 OK 35 at ¶¶ 1, 17, 172 P.3d at 194.

Generally, liability insurance policies impose two duties on the insurer, the duty to defend and the duty to indemnify.  *Above It All Roofing & Construction, Inc. v. Security National Insurance Company*, 285 F. Supp. 3d 1224, 1233 (N.D. Okla. 2018).   As the federal court recognized in *Above it all Roofing*:

> The duty to defend is broader than the duty to indemnify, and is not limited by 'determinable contingencies' or the 'outcome of the third-party action.'  Rather,

under Oklahoma law, '[a]n insurer has a duty to defend an insured whenever it ascertains the presence of facts that give rise to the *potential of liability* under the policy.' An insurer's duty to defend is determined on the basis of the allegations of the petition (and other pleadings), as well as information obtained from the insured and other sources reasonably available to the insurer. Thus, under Oklahoma law, '[t]he duty to defend cannot be limited by the precise language of the pleadings. *The insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible.*'

*Id.* (internal citations omitted) (emphasis in original). *See also Great Lakes Reinsurance UK PLC v. In & Out Fashion, Inc.*, 2016 U.S. Dist. LEXIS 80656 (C.D. Calif. 2016) ("Moreover, that the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability.")

In the instant case, State Farm seeks a declaratory judgment that it has no duty to defend or indemnify SAI from claims made by SGN in the underlying action, or satisfy any judgment that may be entered against SAI therein. Because SGN has pled claims that are not excluded from coverage under the policy, State Farm is required to provide a defense, indemnification, and to satisfy any judgment which may be entered against SAI in the underlying case. SAI should be granted summary judgment in its favor.

### III.  SGN BROUGHT CLAIMS AGAINST SAI IN THE UNDERLYING ACTION THAT TRIGGER COVERAGE

State Farm argues that the Policies at issue offer coverage to SAI for bodily injury, property damage, or personal and advertising injury. Their Amended Complaint quickly dismisses SGN's claims in the underlying suit as alleging either bodily injury or property damage. [State Farm's Amended Complaint at Section III]. And, argues that SGN's claims for tortious interference, deceptive trade practices, and injunctive relief do not fall within the personal and advertising injury

14

coverage or, in the alternative, are excluded by one or more exclusions in the relevant Policies. State Farm, therefore, concludes that no coverage exists.  Contrary to their argument, SGN has pled claims which trigger coverage by State Farm.  SAI should be granted summary judgment in its favor and State Farm should be ordered to provide a defense, to indemnify, and to pay any judgment entered, if any, against SAI in the underlying action.

### A.  SGN's Claims are Based in Trade Dress Allegations

SGN's claims against SAI are based on alleged facts that SAI unfairly competed with SGN in offering bakery catering services (and advertising this offering) in connection with the name Ludger's.  (Second Amended Petition in Tulsa County Case No. CJ-2019-00662, Exhibit "8", [Doc. 2-10] at ¶¶ 74, 79, 85, 93, 100, 102).  Whether such facts trigger a duty to defend and indemnify on the part of State Farm, and if so whether an exclusion applies, is the question now before the Court.  As demonstrated herein, the question of the duty to defend and of deferred indemnity must be answered affirmatively.

The Policies at issue provide coverage for "use of another's advertising idea in your 'advertisement'" or "infringing upon another's copyright, trade dress or slogan in your 'advertisement'".  [cite to Amended Complaint or Policies?]  SGN accuses SAI of advertising on its website that it offers catering services and that providing such services in conjunction with the use of the name Ludger's, which SAI has every right to use, infringes upon its exclusivity of use of the trade name Ludger's Catering and Dining Room and/or Ludger's Catering and Events.

There is no dispute that the claimed infringing conduct occurred in conjunction with advertisement of goods and services on SAI's website in that the word "catering" was shown on

the website for a brief period of time.  Never was the term "Ludger's Catering" shown on SAI's website and never were full catering services offered.  The word "catering" is common and generic.

In fact, SGN does not allege that SAI's offensive conduct is the use of the name "Ludger's Catering."  Instead, SGN claims infringement by virtue of SAI's manner of doing business and the services it offered in connection with the name "Ludger's."  Even though SGN calls the alleged offensive conduct a trade name infringement, in actuality the claim made is one for trade dress infringement or of SAI's use of SGN's advertising idea in its own advertisement.  Both of these claimed avenues of conduct are covered by the subject Policies and not excluded.  (Second Amended Petition at ¶ 40, Exhibit "8" [Doc. 2-10]).

The term "trade dress" represents those features comprising the image or the look of services or of a product.  The manner in which the goods or services are presented to prospective purchasers, to indicate the creator of the trade dress.  *Salt Optics, Inc. v. Jand, Inc.*, 2011 U.S. Dist. LEXIS 156237, *4 (C.D. Calif. 2011).  Trade dress claims involve the total image of a product and may include features such as size, shape, color or color combination, texture, graphics, or even particular sales techniques.   *Id.*  To prevail in a trade dress infringement claim, the plaintiff must show that its trade dress is protected, that it identifies the product source either by being inherently distinctive or having secondary meaning that is not functional and that defendant's trade dress is confusingly similar from the perspective of consumers.  *Id.* at *5; *See also Brunswick Corporation v. Spinit Reel Company*, 832 F.2d 513, 517 (10th Cir. 1987) (recognizing that a product may have a distinctive trade dress that has accumulated goodwill).  Trade dress protection is broader in scope than trademark protection, both because it protects aspects of packaging and product design that cannot be registered for trademark protection and because evaluation of trade dress infringement

16

claims requires the court to focus on the plaintiff's *entire selling image*, rather than the narrower single fact of trademark. *Great Lakes Reinsurance*, 2016 U.S. Dist. LEXIS 80626 at *14.

In this case, SGN's claim is that SAI provided services and utilized the word "catering" in its advertisement and offered the service of providing "savory" menu items which resulted in consumer confusion.  As stated above, SGN does not claim that SAI utilized the trade name "Ludger's Catering" in its advertisement.  Instead, it claims that SAI began offering breakfast and lunch "bundles" through either take out or delivery for small groups which, when offered in conjunction with the word "catering" being used on the menu, even though a generic word, infringed upon its trade dress and the accumulated goodwill associated with the name "Ludger's". In its Response brief in the pending appeal in the underlying case, SGN argues that the term "Ludger's Catering" is "plainly within the goodwill and trade dress of the business that SGN purchased . . . ."  (Response Brief filed July 23, 2019 in Oklahoma Supreme Court Case No. 117984, at p. 11).  SGN contends that the SAI's offering of catering services and provision of "savory" menu items entrenches on the goodwill and trade dress of SGN.  By the facts asserted in the Second Amended Petition, it is clear that SGN's complaints against SAI are centered on the fact that SAI began offering expanded menu items and included the word "catering" on its website in conjunction with use of "Ludger's" which SGN contends is solely within its right to do.  The complaint is as to the nature of the services and items provided in connection with the name, i.e. the entire look and feel of the business and services offered, which is a claim for trade dress infringement and not excluded under the Policies at issue.  *Pestco, Inc.*, 374 F. Supp. 2d at 459 ("Because trade dress may encompass marketing or packaging design to draw attention to a product, it certainly may constitute an advertising idea or a style of doing business.").  When the

17

Second Amended Petition is examined, it is clear that the allegations against SAI are based in trade dress and therefore not excluded under the subject Policies.[2]  Moreover, counsel for SGN and SAI at the temporary injunction hearing, certainly argued before Judge LaFortune as if trade dress infringement is part of SGN's claim (See Statement of Undisputed Facts at ¶¶ 23 and 26).  State Farm has a duty to defend and indemnify SAI for any allegations of trade dress infringement. Since it has the duty to defend SAI on one claim, it must defend SAI on all claims asserted by SGN.

## CONCLUSION

SGN's claims against SAI give rise to the potential for coverage for trade dress infringement, for which coverage under the Policies exist.  Further, information available to State Farm indicates that SAI did not use the word "catering" in its web advertised menu "with knowledge that" it would violate any rights of SGN or cause personal and advertising injury to SGN.  Accordingly, SAI is entitled to summary judgment in its favor and against State Farm that State Farm continue its defense of SAI in the Underlying Action and indemnify SAI for claims made against it by SGN.

---

[2] Exclusions are interpreted narrowly and construed strictly against the insurer.  *Orthopedic Resources, Inc.*, 654 F. Supp. 2d at 1312.  State Farm bears the burden of proving an exclusion applies.  In this case, there is no evidence that SAI ever utilized the term "Ludger's Catering" or offered or provided full catering services for events as did SGN. There is no evidence that any conduct of SAI violated SGN's trade dress rights or even, for that matter, trade name or that SAI knew or had knowledge that SGN would suffer any personal or advertising injury.

Respectfully Submitted,

**RIGGS, ABNEY, NEAL, TURPEN, ORBISON & LEWIS**

/s/ Wm. Gregory James
Wm. Gregory James, OBA #4620
Thomas M. Askew, OBA #13568
Sharon K. Weaver, OBA #19010
502 West 6th Street
Tulsa, OK  74119-1010
(918) 587-3161
(918) 587-9708 (Facsimile)
gjames@riggsabney.com
taskew@riggsabney.com
sweaver@riggsabney.com

19

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 7, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filings to the following:

Galen L. Brittingham – gbrittingham@ahn-law.com

James N. Edmonds – jedmonds@ahn-law.com

/s/ Wm. Gregory James

20