IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
STATE OF OKLAHOMA

DISTRICT COURT
FILED
MAY 29 2019
DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

SGN FOODS, LLC,                                    )
an Oklahoma Limited Liability Company              )
                                                   )
                        Plaintiff,                 )
                                                   )
v.                                                 )    Case No. CJ-2019-00662
                                                   )
SWEET APPETIT, INC,                                )    JUDGE WILLIAM D. LaFORTUNE
an Oklahoma Corporation; THE BLACK FOREST          )
CAFÉ, INC., an Oklahoma Corporation;               )    *Leave Granted on 05/10/19;
and LUDGER SCHULZ, an Individual,                  )    Filed on 05/13/19*
                                                   )
                        Defendants.                )

**PLAINTIFF'S SECOND AMENDED PETITION**

**COMES NOW** Plaintiff, SGN FOODS, LLC, ("SGN" or "Plaintiff"), and by

incorporation of all previous averments and allegations, amends its First Amended Petition against

the Defendant, SWEET APPETIT, INC., ("Sweet Appetit" or "Ludger's Bavarian Cakery"), to

include claims against Defendant, THE BLACK FOREST CAFÉ, INC., ("Black Forest"), an

Oklahoma Corporation, and LUDGER SCHULZ, ("L. Schulz"), an individual. As such, SGN

states as follows:

**I.      PARTIES, JURISDICTION AND VENUE**

1.      Plaintiff is a limited liability company organized under the laws of the State of

Oklahoma, having its principal place of business in Tulsa, Oklahoma.

2.      Defendant, Sweet Appetit, is a Domestic For-Profit Business Corporation formed

under the laws of the State of Oklahoma, having its principal place of business in Tulsa,

Oklahoma.


EXHIBIT
12

3.      Defendant, Black Forest, is a Domestic For-Profit Business Corporation formed under the laws of the State of Oklahoma, having its principal place of business in Tulsa, Oklahoma.

4.      Defendant, L. Schulz, is a resident of The City of Tulsa, Tulsa County, Oklahoma.

5.      Venue in the Tulsa County District Court is proper in that the Defendants or its agents reside or may be found here, a substantial part of the events giving rise to Plaintiff's claims occurred here, and the Defendants transact business here.

## II.      FACTS

6.      On or about November 17, 2009, SGN acquired LUDGER'S Catering & Dining Room from Black Forest by virtue of a Purchase and Sale Agreement (the "Agreement"). *See* Exhibit A, Declaration of Megan J. Sherrill ("M. Sherrill Declaration"), ¶ 3; Exhibit A-1, Purchase and Sale Agreement with attachments.

7.      As part of that Agreement, Black Forest conveyed to SGN "the right to operate **in perpetuity and exclusively** the catering and private dining room establishment of LUDGER'S Catering" for a substantial sum of money. *See* Exhibit A, M. Sherrill Declaration, ¶ 3; Exhibit A-1, Agreement, Art. 2.01 & 2.06, Pgs. 4-5.

8.      The bulk of the purchase price was allocated to the "goodwill of the business, including...any and all trademarks, trade dress, ... and the exclusive right to continue operations of that portion of the business ... using the name 'LUDGER'S Catering & Dining Room', and the right to link to the website (www.ludgers.com), all of the foregoing are intended to continue in perpetuity...." Exhibit A, M. Sherrill Declaration, ¶ 3; Exhibit A-1, Agreement, Art. 2.01, Pg. 4.

9.      The Agreement included a Licensing Agreement which granted SGN the trade name "LUDGER'S Catering and Dining Room" exclusively in perpetuity with the purpose of

2

"offering to the public the services of catering in conjunction with offering a private dining room for catered functions. Exhibit A, M. Sherrill Declaration, ¶ 3; Exhibit A-1, Licensing Agreement, Pg. 51-54.

10.     The only exclusion from the Agreement was that portion of Black Forest's cake and bakery business known as "LUDGER'S Cakes" and/or "LUDGER'S Bakery." *Id.* Exhibit A, M. Sherrill Declaration, ¶ 3.

11.     L. Schulz signed the Agreement as the President of Black Forest. *See* Exhibit A-1, Agreement, Pgs. 9, 12, 36, 40, 45-46, 54, & 57. As of March 2019, the Oklahoma Secretary of State identifies L. Schulz as the registered service agent for Black Forest. *See* Exhibit B, Oklahoma Secretary of State Business Entity listing, Black Forest.

12.     After consummating the Agreement on November 17, 2009, Black Forest transferred the trade name "LUDGER'S Catering and Dining Room" to SGN. *See* Exhibit A, M. Sherrill Declaration, at ¶ 4; Exhibit A-2, Transfer of Trade Name Report.

13.     Since November 2009, SGN, has successfully expanded its catering business and has sold and promoted its catering services continuously under the LUDGER'S name. Exhibit A, M. Sherrill Declaration, at ¶ 4.

14.     In October 2014, SGN registered the "LUDGER'S Catering and Events" trade name with the Oklahoma Secretary of State. *See* Exhibit A, M. Sherrill Declaration, at ¶ 5 & Exhibit A-3, Trade Name Report.

15.     SGN has expended considerable resources promoting its catering services with the "LUDGER'S" name and its trade names, "LUDGER'S Catering and Dining Room" and "LUDGER'S Catering and Events" trade names. *See* Exhibit A, M. Sherrill Declaration, at ¶ 5.

3

16.     Since the purchase of the catering business and license in November 2009 and until the Defendants began offering their own catering services in association with the LUDGER'S name, members of the public readily recognized and associated "LUDGER'S" and catering services exclusively with SGN's operations. *Id.*

17.     In September 2010, Black Forest transferred the "LUDGER'S Cakes" trade name to Sweet Appetit and Allison C. Dickens ("Allison Dickens"). *See* Exhibit A, M. Sherrill Declaration, at ¶ 6; Exhibit A-4, Transfer of Trade Name Report, LUDGER'S Cakes.

18.     In September 2010, Sweet Appetit began offering its cake and bakery business under the trade name "LUDGER'S Bavarian Cakery." *See* Exhibit A, M. Sherrill Declaration, at ¶ 6.

19.     On or about April 8, 2015, SGN became aware that Sweet Appetit's LUDGER'S Bavarian Cakery was offering catering services in addition to its previously established cake and bakery business. *See* Exhibit A, M. Sherrill Declaration, at ¶ 7; Exhibit A-5, April 2015 emails.

20.     When Sweet Appetit's LUDGER'S Bavarian Cakery began offering catering services in 2015, it directly competed with SGN's established LUDGER catering services. *See* Exhibit A, M. Sherrill Declaration, at ¶ 7; Exhibit A-5, April 2015 emails.

21.     By e-mail communication on April 14, 2015, SGN made its position clear that LUDGER'S Bavarian Cakery was offering catering services in violation of SGN's exclusive and perpetual right to provide catering services associated with LUDGER'S trade names. Exhibit A-5, April 2015 emails, Pgs. 2-3.

22.     In April 2015, SGN specifically identified the "Catering Menu" on Sweet Appetit's LUDGER'S Bavarian Cakery website as a source of concern and demanded that it refrain from

4

providing catering services and cease advertising thereof. *See* Exhibit A, M. Sherrill Declaration, at ¶ 7; Exhibit A-5, April 2015 emails, Pg. 3.

23. By e-mail dated April 15, 2015, Sweet Appetit acknowledged that they had filled two (2) catering orders from Walgreens but noted that "[w]e would never have intentionally infringed on one of your clients." *See* Exhibit A, M. Sherrill Declaration, at ¶ 8; Exhibit A-5, April 2015 emails, Pgs. 1-2.

24. Sweet Appetit continued "[t]his is the very reason we haven't 'pushed' our breakfast trays…because many of the suggested targets would be to advertise to pharmaceutical reps and other types of clientele that we know are a core part of your business." *Id.*

25. Sweet Appetit agreed about the confusion surrounding the "use of the word catering for the information on our website" and offered to "change the verbiage so that it is no longer an issue…and …continue to tweak it where it reflects our unique products versus being seen as a conflict." *Id.*

26. In January 2017, the Revocable Inter Vivos Trust of Alecia B. Schulz dated April 13, 1993 and the Revocable Inter Vivos Trust of Ludger J. Schulz dated April 18, 1997 (collectively the "Trusts") purchased an old Braum's store located at 6527 E. 91st Street Tulsa, OK 74133 and the adjacent parking lot. Exhibit C, Tulsa County Docs. 2017010092 & 2017020186, Special Warranty Deed and Correction Special Warranty Deed, respectively; Exhibit D, Tulsa County Assessor's Property Detail Parcel # 75320-83-14-44650 (6527 E. 91st S. Tulsa, OK 74133).

27. In January 2018, the Trusts sold the property containing the old Braum's store to Cake Properties, LLC (Registered Service Agent: Allison Dickens). Exhibit D, Tulsa County

Assessor's Property Detail for Parcel # 75320-83-14-44650 (6527 E. 91st S. Tulsa, OK 74133);
Exhibit E, Tulsa County Doc. 2018006500, Warranty Deed.

28.    The Trusts retained the adjacent parking lot to the East of the old Braum's property
with the property address of 6605 E. 91st S. Tulsa, OK.   Exhibit F Tulsa County Assessor's
Property Detail for Parcel # 75320-83-14-44640.

29.    In the late fall of 2018, SGN became aware that Sweet Appetit's LUDGER'S
Bavarian Cakery was again advertising and offering catering services at its new location at 6527
E. 91st Street in Tulsa, Oklahoma. *See* Exhibit A, M. Sherrill Declaration, at ¶ 9; Exhibit A-6,
Sweet Appetit/LUDGER'S Bavarian Cakery, Catering Menu.

30.    In late November 2018, Sweet Appetit's LUDGER'S Bavarian Cakery website
contained a "Catering" Menu listing "Breakfast Bundles" and "Lunch Bundles" with the
"LUDGER'S" name repeatedly displayed. *See* Exhibit A, M. Sherrill Declaration, at ¶ 9; Exhibit
A-6, Sweet Appetit/LUDGER'S Bavarian Cakery, Catering Menu.

31.    Sweet Appetit's offering of "Breakfast Bundles" and "Lunch Bundles," with the
"LUDGER'S" name repeatedly displayed, directly competes with SGN's catering services in
association with the "LUDGER'S" name. Exhibit A-8, Pg. 2; Exhibit A-8-1, Nov. 30, 2018 Screen
shots, Pgs. 1-3; Exhibit A-6, Nov. 30, 2016 Screen shots, Pgs. 1-3.

32.    Sweet Appetit's offering of catering services, in association with the "LUDGER'S"
name, infringe upon SGN's exclusive and perpetual right to operate the "catering and private
dining room establishment of LUDGER's Catering." *See* Exhibit A, M. Sherrill Declaration, at ¶
9.

33.    In December 2018, SGN issued a "Cease and Desist" letter to the Defendants
demanding the cessation of providing and advertising catering services in connection with the

6

LUDGER'S name. *See* Exhibit A, M. Sherrill Declaration, at ¶ 10; Exhibit A-7, Dec. 7, 2018 Cease and Desist letter with enclosures, Exhibits A-7-1 thru A-7-3.

34.     The Cease and Desist letter explained the use of "LUDGER'S" in association with catering services was SGN's exclusive and perpetual right, and the operation of another catering service in association with the "LUDGER'S" name infringed upon SGN's right. *See* Exhibit A, M. Sherrill Declaration, at ¶ 10; Exhibit A-7, Dec. 7, 2018 Cease and Desist letter with enclosures, Exhibits A-7-1 thru A-7-3.

35.     SGN explained a competing catering service using the "LUDGER'S" name would lead to customer confusion and dilution of SGN's catering business and usage of the trade names "LUDGER'S Catering and Dining Room" and "LUDGER'S Catering and Events." *See* Exhibit A, M. Sherrill Declaration, at ¶ 10; Exhibit A-7, Dec. 7, 2018 Cease and Desist letter with enclosures, Exhibits A-7-1 thru A-7-3.

36.     SGN demanded the Defendants cease all catering services and advertisement thereof with the "LUDGER'S" name. *See* Exhibit A, M. Sherrill Declaration, at ¶ 10; Exhibit A-7, Dec. 7, 2018 Cease and Desist letter with enclosures, Exhibits A-7-1 thru A-7-3.

37.     In mid-December 2018, counsel for the Defendants requested additional time to respond to SGN's Cease and Desist letter. Counsel for the Defendants also requested clarification as to the definition of "catering services" mentioned in the Cease and Desist letter.

38.     In response to these requests, SGN agreed to an extension and clarified the "catering services" offered by Sweet Appetit's LUDGER'S Bavarian Cakery which SGN sought to enjoin. *See* Exhibit A, M. Sherrill Declaration, at ¶ 11; Exhibit A-8, Dec. 14, 2018 Clarification letter with enclosures, Exhibits A-8-1 thru A-8-3.

39.     After offering several definitions of catering services for the Defendants' benefit, SGN stated that "catering services" is not limited to the delivery of or serving at an off-premises location.  SGN's LUDGER'S catering business derives a significant percentage of business from pickup catering orders placed by pharmaceutical reps, among others. *See* Exhibit A, M. Sherrill Declaration, at ¶ 12; Exhibit A-8, Dec. 14, 2018 Clarification Letter, Pg. 2.

40.     Additionally, SGN stated it acquired "the right to operate **in perpetuity and exclusively** the catering and private dining room establishment of LUDGER'S Catering," along with the "goodwill of the business, including…any and all trademarks, trade dress, … and the exclusive right to continue operations of that portion of the business … using the name 'LUDGER'S Catering & Dining Room'…" and further had also acquired the trade name "LUDGER'S Catering and Dining Room" exclusively and in perpetuity. *See* Exhibit A, M. Sherrill Declaration, at ¶ 11; Exhibit A-8, Dec. 14, 2018 Clarification letter with enclosures, Pgs. 1-2.

41.     SGN again reiterated the demand that the Defendants cease and desist from offering or advertising catering services, specifically, Breakfast and Lunch Bundles in association with "LUDGER'S". Exhibit A-8, Clarification letter, Pg. 2.

42.     As of December 2018, Sweet Appetit's "LUDGER'S Bavarian Cakery" website offered and advertised the exact same "Breakfast Bundles" and "Lunch Bundles" as displayed on November 30, 2018.  The only substantive difference was the descriptor of a "Catering" before "Menu" was changed to "Breakfast & Lunch Bundles" before "Menu." *Compare* Exhibit A-6, Nov. 30, 2016 Screen shots, Pgs. 1-3 *with* Exhibit A-9, Dec. 10, 2018 Screen shots; Exhibit A-8-2, Dec. 13, 2018 Screen shots.

43.     Regardless of the change in the descriptor, Sweet Appetit's "LUDGER'S" Breakfast & Lunch Bundles Menu is a catering service in direct competition with SGN's exclusive right.  Exhibit A-8-2, Pgs. 1-3.

44.     Moreover, Sweet Appetit's ordering form for the "LUDGER'S" Breakfast & Lunch Bundles Menu continued to expressly advertise "catering." *Id.* at A-8-2, Pg. 3.

45.     On or about December 27, 2018, the Defendants responded to the Cease and Desist letter through counsel. *See* Exhibit G, December 27, 2018 Response letter.

46.     The Defendants denied infringing or otherwise offering "catering services" by claiming the term "catering" is generic and does not give rise to any exclusivity or prevent the use of the general term "catering." *Id.* at G-3.

47.     The Defendants asserted that "the products offered are distinguishable between the two businesses.  The Defendants argued the LUDGER'S Bavarian Cakery provides "café food type products along with bakery items, while SGN provides full catering of hot products and events with wait staff as the focus of its business." *Id.*

48.     Despite the Response Letter referring to the dispute resolution provisions of the Agreement, L. Schulz and Black Forest made no offer to meet in person or attempt to resolve this matter. *Id.*

49.     Sweet Appetit offered to meet and resolve this matter; however, it continued to engage in catering services associated with the "LUDGER'S" name.

50.     Since SGN issued the Cease and Desist letter in November 2018, significant confusion has occurred with potential and current SGN customers, including South Tulsa Pediatrics, who mistakenly attempted to use the LUDGER'S Bavarian Cakery website menu to

place a luncheon order with SGN for LUDGER'S catering service. *See* Exhibit A, M. Sherrill Declaration, at ¶ 13; Exhibit A-10, Jan.-Feb. 2019 emails.

51.     The Defendants continue to provide and advertise catering services in direct competition with SGN which continues to create significant confusion among customers of SGN and the community at large. *See* Exhibit A, M. Sherrill Declaration, at ¶ 14; Exhibit A-11, Sweet Appetit's catering business.

52.     As recently as February 12, 2019, Sweet Appetit provided catering services to a group of more than sixty (60) persons at a Tulsa Regional Chamber Luncheon event held at the Tulsa Historical Society. *Id.*

53.     On March 12, 2019, L. Schulz, in his individual capacity, registered with the Oklahoma Secretary of State, the trade name of "LUDGER'S CATERING." *See* Exhibit H, Okla. Secretary of State Trade Name Report for LUDGER'S CATERING.

54.     L. Schulz's registration of LUDGER'S CATERING lists the purpose of the entity as "food services." With this registration, L. Schulz asserts that he is conducting business in the food service industry. *Id.* According to the registration, the physical address for LUDGER's CATERING is 6545 East 91st Street, Tulsa OK 74133. *Id.*

55.     The physical address, 6545 East 91st Street, Tulsa OK 74133, is located in the middle of 91st Street and does not exist according to the Tulsa County Assessor. Exhibit I, Google Map result for 6545 E. 91st & Tulsa County Assessor Property Search result.

56.     At the March 27, 2019 hearing on SGN's Motion for Temporary and Permanent injunction, L. Schulz testified he never intended to transfer the exclusive and perpetual right to operate a catering business associated with LUDGER'S name.

57.     L. Schulz testimony is contrary to the terms and conditions of the Agreement. These statements establish L. Schulz and Black Forest made material misrepresentations and acted with deceptive intent upon which SGN relied to its detriment.

58.     At the March 27, 2019 hearing, Allison Dickens the Manager of Sweet Appetit and Cake Properties, LLC, testified that she was aware L. Schulz had registered the trade name, LUDGER'S CATERING, to "protect himself."

59.     At the March 27, 2019 hearing, Jana Kemp testified L. Schulz sought help in staffing private events to take place at the Sweet Appetit's LUDGER's Bavarian Cakery location.

60.     By registering "LUDGER'S CATERING" and engaging in catering services, L. Schulz actively engaged in deceptive practices to dilute, harm, and compete with SGN's LUDGER's catering business.

61.     On May 21, 2019, Defense Counsel, Glennella P. Doss, sent to SGN two (2) letters from L. Schulz with two (2) Transfer of Trade Name Reports and two (2) Assignments of Trade Name for "LUDGER'S Catering and Dining Room" and "LUDGER'S Catering and Events," respectively.  Exhibit J, Defense Counsel envelop with documents.

62.     Four years after the fulfillment date (October 29, 2014) of Licensing Agreement and after receiving full consideration for the License, the documents sent from Defense Counsel allege a breach of the License Agreement and demand SGN reassign its trade names," LUDGER'S Catering and Dining Room" and "LUDGER'S Catering and Events," to Black Forest.  *Id.*; Exhibit A-1, Agreement, Pgs. 51-52; Exhibit A-3, October 3, 2014 Trade Name Report.

63.     The filing of a Trade Name for "LUDGER's Catering and Events" twenty-six (26) days before the fulfillment date of the Licensing Agreement is not a material breach of the Licensing Agreement.  Exhibit A-1, Agreement, Pgs. 51-54.

11

64.     Black Forest received full consideration for the trade name, "LUDGER'S Catering and Dining Room" and suffered no harm from the registration of the "LUDGER's Catering and Events" twenty-six (26) days before the License Agreement's fulfillment date.   Exhibit A-1, Agreement, Pgs. 51-54.

65.     Any omission, deviation, or defect in SGN's performance of the License Agreement terms could have been corrected without difficulty and without any resulting harm to Black Forest during the twenty-six (26) days before the License Agreement's fulfillment date.

66.     By paying full consideration for the license and trade name, SGN acted in good faith and substantially performed all material parts of the Agreement.

67.     SGN claims the requirement to wait an additional twenty-six (26) days before registering any other trademark is excused due to Black Forest's acceptance of all benefits and consideration of the Agreement.

68.     Any complaint Black Forest may have had with the public filing of the "LUDGER's Catering and Events" twenty-six (26) days before the fulfillment date is untimely, waived, barred by laches and is estopped four (4) years after the fact.

69.     Black Forest's demand, four (4) years after the fact, is an attempt to interfere with SGN's business, made with malice, in bad faith, and is merely an attempt to avoid its obligation of granting exclusive and perpetual right to the use of the "LUDGER'S" name in association with catering services.

70.     As a result of the Defendants' actions, SGN has suffered significant damages including the loss of customers and damage to SGN's goodwill built-up since late 2009. *See* Exhibit A, M. Sherrill Declaration, at ¶ 13.

12

71.   The Defendants have interfered with SGN's prospective economic advantage by offering and advertising competing catering services and products in an effort to divert potential SGN catering customers to their businesses. *Id.*

## COUNT I
### (TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS RELATIONSHIPS)

72.   SGN repeats and incorporates the allegations contained in Paragraphs 1-71.

73.   Since late 2009, SGN has continuously and publicly operated a catering service in association with the LUDGER'S name.

74.   The Defendants' offering of catering services (and any advertisement thereof), represents tortious interference with SGN's existing and prospective business and contractual relationships.

75.   The Defendants have interfered with SGN's right to "operate in perpetuity and exclusively the catering and private dining room establishment of LUDGER'S Catering."

76.   The Defendants' intentional past and continued interference is malicious and wrongful, and such interference is neither justified, privileged, nor excusable.

77.   The Defendants improperly and unfairly used the "LUDGER'S" name and goodwill to obtain catering business from SGN's present and potential customers.

78.   SGN has suffered significant damage as a result of the Defendants' interference in the form of loss of catering customers, confusion among existing catering customers, and damage to the goodwill that SGN has built in SGN's LUDGER'S trade names.

79.   The Defendants have interfered with SGN's prospective economic advantage by offering and advertising competing catering services and products in an effort to divert potential LUDGER'S CATERING customers to their businesses.

13

80.     SGN seeks an accounting from the Defendants of all income from catering services received since September 9, 2010. SGN further requests that the Court order the Defendants to disgorge all profits received from offering catering services since September 9, 2010.

### COUNT II
(VIOLATION OF OKLAHOMA DECEPTIVE TRADE PRACTICES ACT,
78 OKLA. STAT. § 51, *ET SEQ.*)

81.     SGN repeats and incorporates the allegations contained in Paragraphs 1-80.

82.     The Defendants tortuous acts violate the Oklahoma Deceptive Trade Practices Act, under 78 OKLA. STAT. § 51 *et seq.*

83.     Under 78 OKLA. STAT. § 53 (a)(1)(2),(3), it is prima facie evidence of intent to injure competitors and an act constituting a deceptive trade practice, if a person passes off goods or services as those of another, knowingly makes a false representation as to the source, sponsorship, approval, or certification of goods or services, or knowingly makes a false representation as to affiliation, connection, association with, or certification by another.

84.     The Sweet Appetit's LUDGER'S Bavarian Cakery website falls within the prohibitions causing confusion among current and potential customers of SGN.

85.     With offering and performing catering services and the registration of the "LUDGER'S CATERING" trade name, the Defendants engaged in the deceptive trade practice to misappropriating SGN's rightful use of "LUDGER'S" in association with catering services.

86.     As defined in the Oklahoma Deceptive Trade Practices Act, "trade name" "means a word, name, symbol, device, or any combination of the foregoing in any form of arrangement used by a person to identify his business, vocation, or occupation and to distinguish it from the business, vocation, or occupation of others." 78 OKLA. STAT. § 52.

14

87.     The Defendants have knowingly made misrepresentations in an effort to deceive, dilute, and injure SGN's substantial goodwill acquired since 2009, and to obtain advantage with the public and potential customers by providing catering services in association with the LUDGER'S name.

88.     SGN requests an order barring Defendants from engaging in these deceptive trade practices which attempt to bolster their business by using SGN's significant goodwill for its LUDGER's catering service.

89.     SGN also requests an award of damages authorized by 78 OKLA. STAT. § 54 for damage to SGN's reputation and loss of existing and potential catering customers.

90.     SGN is also entitled to reasonable attorney fees and costs incurred in bringing this matter.

## COUNT III
### (PERMANENT INJUNCTION)

91.     SGN repeats and incorporates the allegations contained in Paragraphs 1-90.

92.     By clear and convincing evidence, SGN holds the exclusive and perpetual right to provide catering service in conjunction with the LUDGER'S name.

93.     The Defendants, in using the LUDGER'S name, continue to provide and advertise competing catering services in various forms, i.e., "Breakfast and Lunch Bundles Menu."

94.     By clear and convincing evidence, SGN has suffered and will continue to suffer damage to its business reputation if the Defendants are not enjoined from offering competing catering services in any form and format.

95.     SGN's customers and prospective customers have confused the Defendant's catering services with SGN's catering services.

96.     As a result of the customer confusion and Defendants' tortuous interference and deceptive practices, SGN has suffered substantial pecuniary damages.

97.     SGN requests the Court bifurcate and hold a separate hearing to determine SGN's damages resulting from the customer confusion, tortuous interference, and the Defendants' deceptive practices.

98.     By clear and convincing evidence, SGN's significant goodwill developed since acquiring the catering business in November of 2009 has been damaged by the actions of the Defendants.

99.     An award of monetary relief cannot fully compensate SGN for the loss of its customers and good will.

100.    SGN has suffered irreparable injury and will continue to suffer irreparable injury to its business reputation if the Defendants are not enjoined from offering and advertising catering services.

101.    Because the Defendants do not have a right to offer catering services in association with the LUDGER's name, each will not suffer any injury by granting SGN permanent injunctive relief.

102.    A permanent injunction barring the Defendants from advertising and offering catering services is in public's interest.

### COUNT IV – AGAINST L. SCHULZ AND BLACK FOREST, ONLY
(INTENTIONAL DECEIT, FRAUD, FRAUDULENT INDUCEMENT,
& FALSE REPRESENTATION)

103.    SGN repeats and incorporates the allegations contained in Paragraphs 1-102.

104.    In 2009, L. Schulz and Black Forest made intentional material representations to SGN during negotiations and in the Agreement that they had exclusive right, title, and interest in

16

using the LUDGER'S name in association with the catering services.  Exhibit A-1, Agreement, Pg. 2.

105.   L. Schulz and Black Forest represented a desire to sell all licenses and permits to SGN for continued operation of the catering services in association with the LUDGER'S name. Exhibit A-1, Agreement, Pg. 2.

106.   L. Schulz and Black Forest represented the purchase price that SGN paid was for the purchase of assets, stock inventory, the business, and goodwill in addition to the licenses and permits required for the continued operation of LUDGER'S catering services.  Exhibit A-1, Agreement, Pg. 2.

107.   L. Schulz and Black Forest represented that it was selling to SGN their goodwill, trademarks, licenses, and the exclusive right to continue catering operations in association with the LUDGER'S name, in perpetuity.   Exhibit A-1, Agreement, Pg. 4.

108.   In exchange for obtaining the exclusive right in perpetuity to operate a catering business in association with the LUDGER'S name, SGN agreed not to own or operate a bakery business for the selling of cream cheese cakes, wedding cakes, bakery goods, and dessert products using the LUDGER's name.   Exhibit A-1, Agreement, Pg. 6.

109.   As part of the Agreement, L. Schulz and Black Forest retained only the exclusive right to operate a bakery business for the selling of cream cheese cakes, wedding cakes, bakery goods, and dessert products using the LUDGER'S name.

110.   In March 2019 during a hearing in open court and subject to cross and direct examination, L. Schulz testified under oath that he and/or Black Forest never intended to sell the exclusive right to catering services using the LUDGER'S name in perpetuity to SGN.

111.   Assuming L. Schulz's testimony is true, then the previous representations and Agreement were false.

112.   Alternatively, L. Schulz and Black Forest's representations during negotiations and in the Agreement were positive assertions made recklessly without any knowledge of the truth.

113.   L. Schulz and Black Forest intentionally made false and/or misleading representations during negotiations and in the Agreement in an effort to induce SGN to pay more money for exclusive rights and goodwill associated with the LUDGER'S name.

114.   Additional evidence of the fraud and intentional deceit is L. Schulz's registration of the trade name of "LUDGER'S Catering" in early March 2019, prior to his testimony in open court and under oath.

115.   SGN relied upon L. Schulz and Black Forest's representations to its detriment and have suffered injury as a result of their reliance on the fraudulent and/or misleading representations.

116.   SGN prays the Court award it damages and order L. Schulz to assign all right, title and interest in the trade name "LUDGER'S CATERING" to SGN.

117.   As alternative relief to a Permanent Injunction, SGN prays the Court rescind the Agreement and return the parties to the status quo.

## COUNT V – AGAINST L. SCHULZ AND BLACK FOREST, ONLY
### (INTENTIONAL NON-DISCLOSURE OR CONCEALMENT OF A MATERIAL FACT)

118.   SGN repeats and incorporates the allegations contained in Paragraphs 1-117.

119.   L. Schulz and Black Forest concealed and/or failed to disclose their true intent, not to grant an exclusive right, title, and interest of using "LUDGER'S" name in association with catering services in perpetuity to SGN.

18

120.    Concealment and/or failure to disclose this intent was material to the negotiations, purchase, and Agreement between L. Schulz and Black Forest with SGN.

121.    The concealment and/or failure to disclose was intentional and material to the negotiations, purchase, and Agreement between L. Schulz and Black Forest with SGN.

122.    The purpose of L. Schulz and Black Forest's intentional concealment and/or failure to disclose was to create a false impression of the actual facts to SGN, inducing SGN to enter into an Agreement to its detriment.

123.    SGN relied upon L. Schulz and Black Forest's representations to its detriment and suffered damages as a result.

124.    L. Schulz and Black Forest accepted all the benefits and consideration in the Agreement which gave an exclusive and perpetual right to use the "LUDGER'S" name in association with catering services to SGN.

125.    Now, L. Schulz and Black Forest stated they never intended to give the exclusive and perpetual right to use the "LUDGER'S" name in association with catering services to SGN.

126.    Additional evidence of L. Schulz's true intent is his registration of the trade name of "LUDGER'S CATERING" in early March 2019, prior to his testimony in open court and under oath.

127.    As a result of detrimentally relying upon L. Schulz and Black Forest's false impression, SGN's interests, good will, and business has been harmed and suffered damages.

128.    SGN prays the Court award it damages and order L. Schulz to assign/transfer all rights, title, and interest in the trade name "LUDGER'S CATERING" to SGN.

129.    In the alternative to an award of a permanent injunction against the Defendants, SGN prays the Court rescinds the Agreement and return the parties to the status quo.

## COUNT VI – L. SCHULZ ONLY
### (WRONGFUL INTERFERENCE WITH PROPERTY)

130.    SGN repeats and incorporates the allegations contained in Paragraphs 1-129.

131.    When L. Schulz intentionally disregarded the rights, title, and interest of SGN and registered the trade name "LUDGER'S CATERING," he wrongfully interfered with SGN's property, namely, its tradenames and its usage of the "LUDGER'S" name associated with catering services.

132.    As a result of L. Schulz's wrongful interference with SGN's property, SGN has been deprived of its exclusive and perpetual right to its trade name and suffered damages.

133.    SGN prays the Court award it damages and order L. Schulz to assign/transfer all rights, title, and interest in the trade name "LUDGER'S CATERING" to SGN.

### PRAYER FOR RELIEF

**WHEREFORE**, based upon the averments and allegations contained in Paragraphs 1-133, Plaintiff SGN FOODS, LLC prays the Court award it:

1.    Damages in an amount in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, to be proven at trial;

2.    Punitive damages for the Defendants' intentional malicious and deceptive actions;

3.    An Order forfeiting any of L. Schulz rights, title, and ownership in the trade name "LUDGER'S CATERING" and directing L. Schulz effectuate all necessary documentation to assign/transfer any rights, title, and interest in said trade name to SGN;

4.    Permanent injunctive relief as requested, or in the alternative to the Permanent Injunction and Order directing the assignment/transfer of the "LUDGER'S CATERING" trade name, Rescission of the Agreement, including but not limited to:

    a.    Repayment of all monies paid pursuant to the Agreement;

    b.   Compensation for the increase in value of the business, good will, and for the identification of customers and accounts acquired since the purchase;

    c.   And any other necessary orders to return the parties to the status quo

5.    Pre and Post-judgment interest on damages, as appropriate;

6.    Cost of suit incurred herein;

7.    Reasonable attorney fees; and

8.    Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

MULLICAN & HART, P.C.

George R. Mullican, OBA #16701
Christopher D. Wolek, OBA #19612
Michael P. Womack, OBA #20895
Matthew B. Covert, OBA #31970
15 E. 5th Street, Suite 2200
Tulsa, Oklahoma 74103
Telephone: (918) 794-6500
Facsimile: (918) 794-6068
gmullican@mullicanhart.com
cwolek@mullicanhart.com
mwomack@mullicanhart.com
mcovert@mullicanhart.com
ATTORNEYS FOR PLAINTIFF
SGN FOODS, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a full, true and correct copy of the above and foregoing document was served on the 29th day of May 2019, via:

__X__ U. S. First Class Mail, proper postage prepaid;
_____ USPS – Signature Confirmation;
_____ Facsimile;
_____ Hand Delivery;
_____ Email;
_____ Overnight Express Delivery

for Defendant:

Glennella P. Doss
**LAW OFFICES OF
GLENNELLA P. DOSS**
720 E. Marshall
Tulsa, Oklahoma 74106

N. Kay Bridger-Riley
**Bridger-Riley & Associates**
P.O. Box 1591
Owasso, OK 74055

David R. Ross
**NORMAN WOHLGEMUTH**
2900 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103

Matthew B. Covert

22

## ATTORNEY'S VERIFICATION PURSUANT TO RULE 4
## OF THE RULES FOR DISTRICT COURT OF OKLAHOMA

STATE OF OKLAHOMA )
                           ) SS.
COUNTY OF TULSA )

I, Matthew Branton Covert, pursuant to District Court Rule 4 of the Rules for District Courts of Oklahoma, being duly sworn upon oath, depose and state that I have read the above and foregoing Plaintiff's Second Amended Petition and that all allegations and facts contained therein are true and correct to the best of my knowledge, information and belief.

_____
Matthew Branton Covert

STATE OF OKLAHOMA )
                           ) SS.
COUNTY OF TULSA )

Before me, the undersigned Notary Public, in and for said County and State, on this 29th day of May 2019, personally appeared Matthew Branton Covert, to me known to be the identical person who executed the within and foregoing instrument, and acknowledged to me that he executed the same as his free and voluntary act and deed for the uses and purposes therein set forth

IN WITNESS WHEREOF, I hereunto set my official signature and affixed by notarial seal the day and year last above written.

_____
Notary Public

My Commission Expires:

2.28.20