**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **(1) STATE FARM FIRE AND CASUALTY COMPANY,** an Illinois Corporation, | ) ) ) | |
| **Plaintiff,** | ) ) | **Case No. 19-cv-630-CVE-JFJ** |
| **v.** | ) ) | |
| **(1) SWEET APPETIT, INC.,** an Oklahoma Corporation; | ) ) ) | |
| **(2) LUDGER SCHULZ,** | ) ) | |
| **(3) SGN FOODS, LLC, an** Oklahoma Limited Liability Company, | ) ) ) ) | |
| **Defendants.** | ) ) | |

---

**DEFENDANT SWEET APPETIT, INC.'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

---

Respectfully Submitted,

**RIGGS, ABNEY, NEAL, TURPEN,
ORBISON & LEWIS**

Wm. Gregory James, OBA #4620
Thomas M. Askew, OBA #13568
Sharon K. Weaver, OBA #19010
502 West 6th Street
Tulsa, OK  74119-1010
(918) 587-3161
(918) 587-9708 (Facsimile)
gjames@riggsabney.com
taskew@riggsabney.com
sweaver@riggsabney.com

## <u>TABLE OF CONTENTS</u>

SAI'S RESPONSE TO STATEMENT OF UNDISPUTED FACTS ...............................................1

ARGUMENTS AND AUTHORITIES ...........................................................................................7

    I.  SUMMARY JUDGMENT STANDARD  ...........................................................7

    II.  CONTRARY TO STATE FARM'S ARGUMENT, SGN BROUGHT
        CLAIMS AGAINST SAI FOR PERSONAL AND ADVERTISING INJURY ................9

    III.  THE "UNAUTHORIZED USE" EXCLUSION DOES NOT APPLY ............................12

    IV.  THE "KNOWLEDGE" EXCLUSION DOES NOT APPLY ...........................................15

CONCLUSION ............................................................................................................................17

ii

## **TABLE OF AUTHORITIES**

### **CASES:**

*B.S.C. Holding, Inc. v. Lexington Insurance Co.*, 559 Fed. Appx. 663 (10th Cir. 2014) ...............7

*First Bank of Turley v. Fidelity and Deposit Insurance Company of Maryland*,
1996 OK 105, 928 P.2d 298 ........................................................................................ 8, 9, 17

*GuideOne Elite Insurance Company v. Southern Nazarene University*,
2008 U.S. Dist. LEXIS 104628, 2008 WL 5412413 (W.D. Okla. 2008) .......................................8

*Haworth v. Jantzen*, 2006 OK 35, 172 P.3d 193 ...........................................................................8

*High Point Design, LLC v. LM Insurance Corporation*, 911 F.3d 89 (2nd Cir. 2018) ................17

*Orthopedic Resources, Inc. v. Nautilus Insurance Company*,
654 F. Supp. 2d 1307 (N.D. Okla. 2009) ..........................................................................8, 12, 15

*St. Luke's Cataract & Laser Institute, P.A. v. Zurich American Insurance Company*,
506 Fed. Appx. 970 (11th Cir. 2013) ....................................................................................... 13-14

*State Farm Fire and Casualty Co. v. Prescott*,
2019 U.S. Dist. LEXIS 69804, 2019 WL 1840906 (Haw. 2019) .................................................12

*Tulsa Zoo Management, Inc. v. Peckham Guyton Albers & Viets, Inc.*, 2019 U.S. Dist. LEXIS
33854, *11, 2019 WL 1029544 (N.D. Okla. 2019) .......................................................................1

*Westfield Insurance Company v. Factfinder Marketing Research, Inc.*,
860 N.E.2d 145 (Ohio Ct. App. 2006) ...........................................................................................9

*Westfield Companies v. O.K.L. Can Line*, 804 N.E.2d 45 (Ohio Ct. App. 2003) .................... 11-12

*Western Heritage Insurance Company v. Chava Trucking, Inc.*,
991 F.2d 651 (10th Cir. 1993) ........................................................................................................7

*Wilson v. Travelers Ins. Co.*, 1980 OK 9, 6025 P.2d 1327 ...........................................................8

### **RULES:**

Federal Rules of Civil Procedure 56 ...............................................................................................1

Local Civil Rule 56.1 .......................................................................................................................1

**OTHER:**

https://www.searchmetrics.com/glossary/meta-tag/ .......................................................4

**RELATED LITIGATION:**

*SGN Foods, LLC v. Sweet Appetit, Inc. et al.*,
Tulsa County District Court, Case No. CJ-2019-662 ...................................................8

*SGN Foods, LLC v. Sweet Appetit, Inc.*, Okla. Supreme Court Case No. IN-117984....................8

COMES NOW the Defendant, Sweet Appetit, Inc. ("SAI" or "Sweet Appetit"), pursuant to Fed. R. Civ. P. 56 and Local Rule LCvR 56.1, and for its Response in Opposition to Plaintiff State Farm Fire and Casualty Company's ("State Farm") Motion for Summary Judgment [Dkt No. 37] respectfully submits the following:

## SAI's RESPONSE TO STATE FARMS' STATEMENT OF UNDISPUTED FACTS

1.      SAI does not dispute the facts set forth in paragraph 1.

2.      SAI does not dispute that in 2009 The Black Forest Café, Inc. ("BFC") operated "Ludger's Catering & Dining Room" and "Ludger's Cakes" / "Ludger's Bakery."   SAI's acknowledgement of the facts set forth in paragraph 2 is not intended to signal agreement with the Declaration of Megan J. Sherrill or with any particular paragraph therein.   Self-serving conclusory affidavits and declarations which attempt to draw inferences are not proper evidence in support of a motion for summary judgment.   *Tulsa Zoo Management, Inc. v. Peckham Guyton Albers & Viets, Inc.*, 2019 U.S. Dist. LEXIS 33854, *11, 2019 WL 1029544 (N.D. Okla. 2019).   Moreover, State Farm's reliance on a declaration from a party which filed suit against its own insured, seems questionable.

3.      SAI does not dispute the facts set forth in paragraph 3.

4.      SAI does not dispute that the facts set forth in paragraph 4 quote a portion of the Purchase and Sale Agreement between BFC and SGN.   However, the perpetuity and exclusivity right was conditioned on SGN's compliance with the terms of the contract.   Because SGN breached the contract, which is an issue in the underlying suit, SAI disputes any implication or inference intended by paragraph 4 concerning the alleged right.

1

5.      SAI does not dispute that the facts set forth in paragraph 5 quote a portion of the Purchase and Sale Agreement between BFC and SGN.  SAI and SGN, however, agreed to discontinue use of the website www.ludgers.com, which was owned by SAI, and to instead use their own individual websites, www.ludgerscatering.com and www.ludgersbavariancakery.com to give each business its own control over their own website and to further distinguish the two companies.  *See* August 7-31, 2017 emails between Ms. Sherrill and Ms. Dickens re: change of website, attached as Exhibit "1".

6.      SAI does not dispute the facts set forth in paragraph 6.

7.      SAI does not dispute the facts set forth in paragraph 7, but does dispute that the transcript testimony referenced supports the alleged facts therein.

8.      SAI does not dispute the facts set forth in paragraph 8, but she was not aware of the terms of that sales transaction and disputes any implication that she was so aware (Transcript of Temporary Injunction Hearing, ("Hearing Transcript") 16:15-23; 163:9–18, attached as Exhibit "2")

9.      SAI does not have sufficient knowledge to either admit or dispute the facts set forth in paragraph 9.

10.     SAI disputes the facts set forth in paragraph 10.  SAI disputes State Farm's presentation as evidence of a self-serving declaration of Megan Sherrill and disputes the alleged facts stated therein.  SAI is not now, nor has it been, in the catering business in competition with SGN.  Ex. 1, August 7-31, 2017 emails between Ms. Sherrill and Ms. Dickens.

11.     SAI does not dispute that an email was sent to Ms. Dickens by Megan Sherrill.  SAI disputes State Farm's presentation as evidence of a self-serving declaration of Megan Sherrill and

disputes the alleged facts stated therein.  SAI is not now, nor has it been, in the catering business in competition with SGN.  Ex. 1, August 7-31, 2017 emails between Ms. Sherrill and Ms. Dickens.

12.     SAI does not dispute that an email was sent by Ms. Dickens to Megan Sherrill but does dispute any implication of infringement thereby.  SAI also disputes State Farm's presentation as evidence of a self-serving declaration of Megan Sherrill and disputes the alleged facts stated therein.  SAI is not now, nor has it been, in the catering business in competition with SGN and informs SGN in the email that it "would never have intentionally infringed on one of [SGN's] clients."  *See* April 15, 2015 email, attached as Exhibit "3" and Ex. 1, August 7-31, 2017 emails between Ms. Sherrill and Ms. Dickens.

13.     SAI disputes the facts set forth in paragraph 13 to the extent that it misstates the language in the email.  In the email, Ms. Dickens offers to address the confusion consistent with Ms. Sherrill's wishes.  Ex. 3 April 15, 2015 email.

14.     SAI disputes that the facts set forth in paragraph 14 are supported by the hearing testimony cited.  The testimony cited states that the "catering menu" was taken down.  (*See* April 16, 2015 email, contained in Exhibit "3" and Ex. 2 Hearing Transcript at 169:3-16).

15.     SAI disputes the facts set forth in paragraph 15 to the extent that www.ludgersbavariancakery.com is a website domain name and not an "email address link" as termed by State Farm.  The April 16, 2015 email [Ex. 3] also identifies Megan Sherrill/SGN's separate website domain name www.ludgerscatering.com.

16.     SAI does not dispute that its website contained a page titled "Catering Menu" in late 2018 on which it offered breakfast and lunch bundles.

17.    SAI disputes that the web page URL cited in paragraph 17 is a "metatag" as claimed by State Farm.  The file path to a web page is not the same as a metatag and is also not controlled directly by SAI but is instead under the control of the website creator.  [Ex. 2, Hearing Transcript at 172:12-173:3].    A    metatag    is    not    displayed    on    a    website.    (*See* https://www.searchmetrics.com/glossary/meta-tag/)

18.    SAI disputes the facts set forth in paragraph 18.  SGN knew that SAI had the right to use the name Ludger's and that SAI purchased the website www.Ludgers.com.  (Ex. 2 to SAI's Motion for Summary Judgment [Dkt. No. 35.2] SAI Purchase and Sale Agreement at p.20, Asset Acquisition Statement).  SGN's complaint concerned SAI's use of the word "catering" on its website and SAI's advertising and marketing of Breakfast Bundles and Lunch Bundles.  Ex. 3, April 16, 2015 email from Ms. Sherrill to Ms. Dickens.

19.    SAI does not dispute that SGN sent a letter dated December 7, 2018 and that the quoted language appears in the letter.  SAI disputes, however, any implication sought to be raised by either the totality of the letter or the portions of the letter quoted.

20.    SAI does not dispute the facts set forth in paragraph 20, but does dispute that any inference can be drawn from such facts in support of State Farm.  SAI agreed to remove the word "catering" from its website in an effort to get along with SGN, not due to any contractual or legal purpose.  It was simply an oversight that the word "catering" remained in the order form for a brief period.  Once SAI became aware of it, they removed it as well, again solely in an effort to get along with SGN and not due to any belief that it infringed on SGN's trade dress.  [Ex. 2, Hearing Transcript at 172:12-173:3].

21.     SAI disputes the alleged facts set forth in paragraph 21; disputes State Farm's presentation as evidence of a self-serving declaration of Megan Sherrill; and disputes that SGN has suffered any damages caused or contributed to by SAI.  SAI is not now, nor has it been, in the catering business in competition with SGN.  Any damages claimed by SGN, if any are proven, are in the province of the jury in the underlying case after presentation of all of the evidence.  Ex. 1, August 7-31, 2017 emails between Ms. Sherrill and Ms. Dickens.

22.     SAI disputes the alleged facts set forth in paragraph 22; disputes State Farm's presentation as evidence of a self-serving declaration of Megan Sherrill; and disputes that SGN has suffered any damages caused or contributed to by SAI.  SAI is not now, nor has it been, in the catering business in competition with SGN. Any damages claimed by SGN, if any are proven, are in the province of the jury in the underlying case after presentation of all of the evidence.  Ex. 1, August 7-31, 2017 emails between Ms. Sherrill and Ms. Dickens SAI disputes that SGN will be able to present evidence to establish confusion by South Tulsa Pediatrics.  In fact, this business is located in close proximity to SAI and ordered from SAI's café menu just as if they were standing at the counter inside the store.    (*See* Answer of SAI [Dkt. No. 12] at ¶ 39; Ex 4, Declaration of Allison Dickens).

23.     SAI disputes the alleged facts set forth in paragraph 23; disputes State Farm's presentation as evidence of a self-serving declaration of Megan Sherrill; and disputes that SGN has suffered any damages caused or contributed to by SAI.  SAI is not now, nor has it been, in the catering business in competition with SGN.  Any damages claimed by SGN, if any are proven, are in the province of the jury in the underlying case after presentation of all of the evidence.  Ex. 1, August 70-31, 2017, emails between Ms. Sherrill and Ms. Dickens. SAI disputes that SGN will be

able to present evidence to establish confusion by the Tulsa Regional Chamber.  The order was placed with SAI because Ms. Dickens was an active member of the organization. (*See* Answer of SAI [Dkt. No. 12] at ¶ 40; Ex 4, Declaration of Allison Dickens).

24.     SAI does not dispute that Tulsa County Case No. CJ-2019-662 was filed on February 14, 2019, ("the underlying suit").

25.     SAI does not dispute that SGN filed a Motion for Temporary and Permanent Injunction on February 14, 2019, in the underlying suit.

26.     SAI does not dispute the facts set forth in paragraph 26.

27.     SAI does not dispute that the quoted language in paragraph 27 is contained in the trial court's order filed April 17, 2019.  This Order is the subject of a currently pending appeal to the Oklahoma Supreme Court, Case No. IN-117984, filed May 17, 2019, assigned to the Oklahoma City division of the Court of Civil Appeals on September 4, 2019.

28.     SAI does not dispute that the quoted language in paragraph 28 is contained in the trial court's order filed April 17, 2019.  This Order is the subject of a currently pending appeal to the Oklahoma Supreme Court, Case No. IN-117984, filed May 17, 2019, assigned to the Oklahoma City division of the Court of Civil Appeals on September 4, 2019.

29.     SAI does not dispute the facts set forth in paragraph 29 that SGN filed a Second Amended Petition in the underlying action on May 29, 2019.

30.     SAI does not dispute that the Second Amended Petition filed in the underlying case contains the language quoted in paragraph 30.  SAI does dispute that SGN is entitled to any damages or has been damaged by any acts of SAI.

31.     SAI does not dispute that the Second Amended Petition filed in the underlying case contains the language quoted in paragraph 31.  SAI does dispute that SGN is entitled to any damages or has been damaged by any acts of SAI.

32.     SAI does not dispute that the Second Amended Petition filed in the underlying case contains a claim for permanent injunction.

33.     SAI does not dispute the facts set forth in paragraph 33.

34.     SAI does not dispute the facts set forth in paragraph 34.

35.     SAI does not dispute the facts set forth in paragraph 35.  To the extent that State Farm's final sentence of its section of Undisputed Facts is intended to be included in paragraph 35, it is disputed.  The Policies at issue do provide coverage for the claims asserted against SAI by SGN in the underlying litigation and State Farm should be required to defend and indemnify SAI.

## ARGUMENTS AND AUTHORITIES

### I. SUMMARY JUDGMENT STANDARD

Summary judgment can only be granted if, by the evidentiary materials presented, the Court concludes that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *B.S.C. Holding, Inc. v. Lexington Insurance Co.*, 559 Fed. Appx. 663, 665-666 (10th Cir. 2014); *Western Heritage Insurance Company v. Chava Trucking, Inc.*, 991 F.2d 651, 653 (10th Cir. 1993).  In conducting a summary judgment analysis the court examines the factual record and views all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  *Chava Trucking*, 991 F.2d at 653.  Viewing all facts and inferences in the light most favorable to SAI, as the Court is required to do, it is clear that summary judgment in favor of State Farm is not warranted.

7

Because insurance contracts are contracts of adhesion they are interpreted most strongly against the party that prepared the contract. *Wilson v. Travelers Ins. Co.*, 1980 OK 9, ¶ 8, 605 P.2d 1327, 1329.  Words of exclusion will be strictly construed against the insurer.  *Haworth v. Jantzen,* 2006 OK 35, ¶ 17, 172 P.3d 193, 197; *Orthopedic Resources, Inc. v. Nautilus Insurance Company*, 654 F. Supp. 2d 1307, 1312 (N.D. Okla. 2009) (recognizing that exclusions are construed strictly against the insurer).  While a court is not at liberty to rewrite an unambiguous insurance policy, neither is it at liberty to rewrite the claims alleged in a lawsuit to fit within exclusions in the policy, which is what State Farm urges the Court to do in this case.

The duty to defend and to indemnify are separate issues.  *First Bank of Turley v. Fidelity and Deposit Insurance Company of Maryland*, 1996 OK 105, ¶ 13, 928 P.2d 298, 302-303.  This Court may decide the duty to defend but allow the issue of the duty to indemnify to be resolved after a determination of the issues in the underlying action, which is in its preliminary stages.  (*See GuideOne Elite Insurance Company v. Southern Nazarene University*, 2008 U.S. Dist. LEXIS 104628, 2008 WL 5412413 (W.D. Okla. 2008) (withholding ruling on the duty to indemnify pending further development of the underlying litigation, but allowing the issue of the duty to defend to move forward).  The temporary injunction order entered by Judge LaFortune in the underlying case is currently pending on appeal.  (Okla. Supreme Court Case No. IN-117984).

SGN filed its underlying action February 14, 2019 and has twice amended its Petition in that case.  (Tulsa County District Court, Case No. CJ-2019-662, First Amended Petition filed February 19, 2019 and Second Amended Petition filed May 29, 2019.  SGN pled facts which bring the claims asserted within the personal and advertising injury coverage provisions of the applicable Policies.

> Where the allegations of the petition state a claim that is potentially or arguably within the policy coverage, the insurer must accept the defense of the claim, regardless of the ultimate outcome of the action or the insurer's liability to the insured.  The insurer must initially accept the defense of a claim where there is 'some doubt' about whether a theory of recovery within the policy coverage has been pleaded.  When an insurer must provide a defense on one claim, it must defend the insured on all the other allegations, regardless of whether they are related to the insurance-policy coverage.

*Westfield Insurance Company v. Factfinder Marketing Research, Inc.*, 860 N.E.2d 145, 150 (Ohio Ct. App. 2006).  Oklahoma law is in accord.  *See, First Bank of Turley*, 1996 OK 105 at ¶ 13, 928 P.2d at 302-303.  Only where the conduct alleged is undisputedly outside the scope of coverage, which is not the case here, does the duty to defend not attach.  *Factfinder Marketing*, 860 N.E.2d at 150.

In this case, claims for trade dress infringement are covered as is use of another's advertising idea.  State Farm owes SAI both defense and indemnity from the claims SGN pleads.

## II.  CONTRARY TO STATE FARM'S ARGUMENT, SGN BROUGHT CLAIMS AGAINST SAI FOR PERSONAL AND ADVERTISING INJURY

State Farm acknowledges that the Policies at issue offer coverage to SAI for bodily injury, property damage, or personal and advertising injury.  Their Motion for Summary Judgment quickly dismisses SGN's claims in the underlying suit as alleging either bodily injury or property damage. [State Farm's Motion at p. 14].  State Farm then tries to argue that SGN did not bring claims against SAI that come within the personal and advertising injury provision in the Policies or, if so, are excluded by one or more of the exclusions in the Policies.  Here, State Farm is wrong.

State Farm quotes the language in the relevant Policies defining "personal and advertising injury" to mean "injury, . . . arising out of one or more of the following offenses: . . . f. The use of another's advertising idea in your 'advertisement', or g. Infringing upon another's trade dress or

slogan in your 'advertisement.'"   (State Farm Motion [Dkt. No. 37] at p. 17-18).   State Farm contends that the claims brought by SGN, specifically Count I – Tortious Interference with Existing and Prospective Business Relationships; Count II – Violation of Oklahoma Deceptive Trade Practice Act; and Count III – Permanent Injunction, are not enumerated within the definition of "personal and advertising injury" in the Policies and, therefore, cannot give rise to coverage. State Farm has quickly forgotten its own cited authorities explaining that coverage is not dictated by the legal theories pled, but instead by the facts of the pleading and the cause of the injury alleged.  (*See* State Farm's Motion at p. 12).[1]

Throughout its Second Amended Petition in the underlying case, SGN bases its claim for damages on the alleged overt acts of SAI in advertising, offering, and marketing of catering services in conjunction with the name "Ludger's," which SAI at all times had the right to use.  (*See* Second Amended Petition at ¶¶ 74, 77, 78, 79, 85, 87, 93, 94, 96, 100, 101, 102).  "Section II – Definitions" of the Policy defines "Advertisement" as follows:

> 1.      'Advertisement' means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.  For the purposes of this definition:
>
> > a.      Notices that are published include material placed on the Internet or on similar electronic means of communication; and
> >
> > b.      Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

[Dkt. 37.13 to SGN's Motion, Policy p. 34, Section II(1)(a)(b)].

---

[1] Furthermore, the underlying action is in its early stages.  SGN's Petition has been twice amended and no meaningful discovery has taken place which may lead to additional claims being made against SAI that also give rise to coverage under the Policies at issue.

"A web page is advertising under any definition." *Westfield Companies v. O.K.L. Can Line*, 804 N.E.2d 45, 51 (Ohio Ct. App. 1st Dist. 2003). And, "trade-dress infringement necessarily involves advertising" because a required element in every trade dress case is that the dress is likely to cause confusion to the consumer or to deceive the consumer as to the origin of the goods. *Id.* "To have (or potentially cause) this effect, one must clearly advertise (announce to the intended customers) the mark or dress." *Id.* The court in *O.K.L. Can Line* found that the insurer had a duty to defend the claims asserted against O.K.L. under the "personal and advertising injury" provisions of the policy at issue. Alcoa, plaintiff in the underlying action, brought claims of trade dress infringement for offering, advertising, and marketing of a product it claimed O.K.L. had illegally copied resulting in actual confusion among members of the purchasing public as to the origin of the product. *Id.* at 50. O.K.L.'s insurer, Westfield, claimed it had no duty to defend.

"Advertisement" as defined in the Westfield policy required that the injury arise out of a notice that is broadcasted or published to the public about goods or products for the purpose of attracting customers. *O.K.L. Can Line*, 804 N.E.2d at 51. The court noted that Alcoa pled that O.K.L. sold and marketed the product and confused buyers and potential buyers. This was sufficient to meet the definition of "advertisement" even though the word advertise was not used in the petition. Additionally, the court found that by offering the allegedly infringing product for sale on its website and the customer confusion engendered by such marketing, O.K.L. had engaged in advertisement as defined in the policy. *Id.* at 50-51.

Westfield claimed that one or more exclusions applied to relieve it of its duty to defend O.K.L. against the claims asserted by Alcoa in the underlying action. *O.K.L. Can Line*, 804 N.E.2d at 52. Westfield claimed the Alcoa petition contained allegations of intentional infringement and,

11

therefore, the "Intentional and Knowing" exclusion absolved Westfield of its duty to defend.  The court disagreed and held "that the exclusion did not apply because the complaint stated a claim for non-intentional infringement as well.  Alcoa could have prevailed on the Lanham Act or the common-law trade-dress-infringement claim without proving intentional or knowing infringement."  *Id.* at 52-53.  Affirming the district court, the appellate court found that Westfield had a duty to defend O.K.L. against Alcoa's claims for personal and advertising injury and that no exclusion applied to bar coverage.  *Id.*

### III. THE "UNAUTHORIZED USE" EXCLUSION DOES NOT APPLY

State Farm claims that its duty to defend and indemnify is excused by an exclusion in the Policies for personal and advertising injury:

> m.      Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers;

(State Farm Motion at p.20).  This exclusion, however, does not apply in this case.  State Farm bears the burden of proving that an exclusion should apply to preclude coverage.  *Orthopedic Resources, Inc.*, 654 F. Supp. 2d at 1312.  In support of its argument State Farm cites the case of *State Farm Fire and Casualty Co. v. Prescott*, 2019 U.S. Dist. LEXIS 69804, 2019 WL 1840906 (Haw. 2019).  In *Prescott*, the issue was the use by Prescott in internet listings and advertisements of another's trade name "Volcano Inn" for her bed and breakfast.  *Id.* at *2.  The court recognized that even though the exclusion specifically mentioned use of another's name in an email address, domain name, or metatag, that the "other similar tactics" provision could include use in internet listings and advertisements.  *Id.* at *10.  The court found State Farm had no duty to defend.

In this case, State Farm claims the exclusion applies because SAI used the name "Ludger's" and included the word catering on its website.  The facts of the present case are not like *Prescott*.  For the exclusion to apply, State Farm must show SAI's unauthorized use of SGN's name or product.  Use of the name "Ludger's" by SAI cannot be unauthorized.  SAI purchased the name when it purchased its business.  SGN was at all times fully aware that SAI had every legal right to use the name "Ludger's" in connection with its business.  Ex. 1, August 7-31, 2017 emails between Ms. Sherrill and Ms. Dickens.  Moreover, the website www.Ludgers.com was sold to and owned by SAI.  (Ex. 2 to SAI's Motion for Summary Judgment [Dkt. No. 35.2] SAI Purchase and Sale Agreement at p.20, Asset Acquisition Statement).   SGN had a right to link to that website but did not own it.  The website acted as a landing page and contained the logos and links to both Ludger's Catering and to Ludger's Bavarian Cakery.  The email addresses for the individual owners and employees of both companies carried the @ludgers.com domain name. Each company also maintained its own individual website: www.ludgerscatering.com for Ludger's Catering and www.ludgersbavariancakery.com for Ludger's Bavarian Cakery.  State Farm cannot prevail on an argument that SAI used the name Ludger's without authorization.

SGN complains in the underlying case that use of the trade dress and generic term "catering" and the offering of alleged catering services by SAI in conjunction with the name Ludger's in its advertising caused customer confusion and damaged SGN.  An almost exact duplicate of the State Farm "unauthorized use" exclusion was analyzed by the 11th Circuit Court of Appeals in *St. Luke's Cataract & Laser Institute, P.A. v. Zurich American Insurance Company*, 506 Fed. Appx. 970 (11th Cir. 2013).  In *St. Luke's* the dispute centered on a copyright claim against a former physician employed by St. Luke's who started his own business but utilized the

contents, layout, and design of St. Luke's website in doing so.  *Id.* at 976.  The appellate court found that use of the website's content was not the same as use of another's name or product and that displaying the content on his own website did not come within the three specifically enumerated places in the exclusion, i.e. "e-mail address, domain name or metatag."  *Id.*  The court went on to state that "if the exclusion were meant to include websites generally, it would be odd to enumerate two constituent elements of a website (its domain name and metatags) but neglect to mention the website itself."  *Id.*  "To conclude otherwise would allow the 'similar tactics' language to swallow the narrow language used in the exclusion and turn it into a catch-all exclusion for the use on the internet in any way of material belonging to another."  *Id.*  "We should not read the exclusion's 'similar tactics' language to expand a list of three specific, narrow uses to the point where any unauthorized use on a website is excluded from coverage."  *Id.* at 977.

In the present case SAI had the legal right and authority to use the name Ludger's in connection with its business.  Of this there can be no dispute.  One critical issue in the underlying case is whether by including the generic word "catering" on its website, SAI infringed the trade dress or trade name of SGN.  SGN's trade names "Ludger's Catering & Dining Room" or "Ludger's Catering and Events" were never used by SAI, nor is there a claim that they were. Additionally, it is important to note, that the shortened version of "Ludger's Catering" was never used by SAI.  Following the 11th Circuit court's reasoning in *St. Luke's*, use of a generic word such as "catering" on the Ludger's Bavarian Cakery website does not come within the exclusion. SAI does not perform the catering services SGN performs, and never has.  Ex. 1, August 17, 2017 email from Ms. Dickens to Ms. Sherrill (explaining that SAI is not a catering company and does not want to be a catering company); Ex. 3, April 8-16, 2015 emails between Ms. Sherrill and Ms.

14

Dickens (explaining that the companies and the clientele are very different and that SAI is not a caterer).  Ms. Sherrill told Ms. Dickens in 2015 that SGN's contention was not with SAI providing savory items on its menu, it was simply with the use of the word "catering" on its website. Ex. 3, April 16, 2015 emails.  In an effort to get along, SAI removed the word catering.  *See* Response to Undisputed Fact No. 20 above.  Moreover, as Ms. Dickens testified at the injunction hearing, the header and side bar of the Ludger's Bavarian Cakery website are not controlled by SAI, but are instead under the control of the website creator.  [Ex. 2, Hearing Transcript at 172:12-173:3].  Once Ms. Dickens learned that the term "catering" was still on the website, she contacted the creator about taking it down in her continued effort to get along with SGN.  *See* Response to Undisputed Fact No. 20 above.

The "unauthorized use" exclusion does not apply in this case and should be disregarded.

## IV.  THE "KNOWLEDGE" EXCLUSION DOES NOT APPLY

Likewise, the "knowledge" exclusion does not apply in this case.  Again, State Farm bears the burden of proving that an exclusion should apply to preclude coverage.  *Orthopedic Resources, Inc.*, 654 F. Supp. 2d at 1312.  To prevail in its argument State Farm would need to show that SAI's inclusion of a catering menu on its website was done "with the knowledge that" it would violate the rights of SGN and "would inflict 'personal and advertising injury.'"  "Personal and advertising injury" is defined in the policy as "arising out of one or more of the following offenses:

a.  False arrest, detention or imprisonment;

b.  Malicious prosecution;

c.  The wrongful eviction from, wrongful entry into, or invasion of the right of privacy, of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

15

d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.  Oral or written publication, in any manner, of material that violates a person's right of privacy;

f.  The use of another's advertising idea in your 'advertisement'; or

g.  Infringing upon another's copyright, trade dress or slogan in your 'advertisement'.

[State Farm's Ex. Dkt. No. 37.13 at Section II(18)].  State Farm has presented nothing to prove that SAI had the requisite knowledge that use of the generic word "catering" on its website would violate the rights of SGN and inflict any of the enumerated categories of injury which define personal and advertising injury in the Policy.  The decision whether or not SAI acted "with knowledge that" using "Ludger's" and separately "catering" on its web menu would inflict "personal and advertising injury" should rest with the jury in the Underlying Action, rather than this Court.  As stated in SAI's Motion for Summary Judgment, information is available to State Farm indicating that SAI's Allison Dickens did not add the word "catering" to SAI's website with knowledge that it would violate any rights SGN had or cause SGN personal and advertising injury (*See* [Dkt. No. 35], Undisputed Fact No. 28, pp. 10 and 11).

Because it is State Farm's burden to support application of the exclusion, which it has not done, this exclusion does not apply to preclude coverage.[2]

---

[2] State Farm adds the "Trademark Infringement Exclusion" almost as an afterthought and without any real attempt at argument in favor of its application.  State Farm has not met its burden to show that this exclusion applies and it should be disregarded.

## **CONCLUSION**

State Farm has failed to carry the day on avoiding its obligations to defend and indemnify SAI for the claims asserted against it by SGN.  SAI maintains the State Farm's duty to defend exists without question.  Although SAI believes State Farm's duty to indemnify also exists, should the Court feel further factual development and proof from the Underlying Action, which is in its early stages, would help to fairly resolve that duty, the Court may decide the duty to indemnify upon conclusion of the Underlying Action and move forward here with deciding in SAI's favor on State Farm's duty to defend obligation.   An insurer may deny its insured a defense "only if it could be concluded as a matter of law that there is no possible factual or legal basis on which the insurer might eventually be held to be obligated to indemnify the insured under any provision of the insurance policy."  (*See High Point Design, LLC v. LM Insurance Corporation*, 911 F.3d 89, 95 (2nd Cir. 2018)); Oklahoma law is in accord. *See First Bank of Turley*, 1996 OK 105 at ¶ 13, 928 P.2d 298 (citing with approval case law holding that the insurer has the duty to look behind the allegations to analyze whether coverage is possible and that the duty to defend cannot be limited by the precise language of the pleadings).  Here, trade dress infringement or use of SGN's advertising idea, although neither is admitted as occurring, are fairly encompassed by SGN's allegations and other information available to State Farm.  State Farm's Motion should be denied and SAI's Motion for Summary Judgment should be granted.

Respectfully Submitted,

**RIGGS, ABNEY, NEAL, TURPEN,
ORBISON & LEWIS**

/s/ Wm. Gregory James
Wm. Gregory James, OBA #4620
Thomas M. Askew, OBA #13568
Sharon K. Weaver, OBA #19010
502 West 6th Street
Tulsa, OK  74119-1010
(918) 587-3161
(918) 587-9708 (Facsimile)
gjames@riggsabney.com
taskew@riggsabney.com
sweaver@riggsabney.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 28, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filings to the following:

Galen L. Brittingham – gbrittingham@ahn-law.com

James N. Edmonds – jedmonds@ahn-law.com

/s/ Wm. Gregory James