UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | )  Case No. 19-CV-0630-CVE-JFJ ) |
| SWEET APPETIT, INC., an Oklahoma corporation, and SGN FOODS, LLC, an Oklahoma limited liability company, | ) ) ) ) ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

On December 13, 2019, plaintiff State Farm Fire and Casualty Company (State Farm) filed this action seeking a declaratory judgment pursuant to 28 U.S.C. § 2201 et seq. In its complaint (Dkt # 5), State Farm seeks a declaratory judgment that it has no duty to defend or indemnify defendant Sweet Appetit, Inc. (SAI) or Ludger Schulz (Schulz), in a lawsuit brought by SGN Foods, LLC (SGN), in state court. State Farm argues that the commercial liability insurance policy it issued to SAI does not provide coverage for the claims or injuries alleged in the underlying state court action. On April 6, 2020, the Court issued an order (Dkt. # 33), finding that there was no dispute Schulz was not an insured under any policy described in the complaint, and partial declaratory judgment was entered for State Farm against Schulz (Dkt. # 34), relieving State Farm of any duty to defend or indemnify him in the underlying state court action. Now, before the Court are cross-motions for summary judgment of State Farm and SAI.

In State Farm's motion for summary judgment (Dkt. # 37), it argues that the scope of coverage does not extend to SGN's causes of action in the underlying state court action because they are not within the enumerated injuries defined in the policy. State Farm further argues that, even if the injuries are within the scope of injuries defined in the policy, the injuries are not covered because they are specifically excluded. In response (Dkt. # 40), SAI argues that, in considering whether the duty to defend exists, the inquiry is not whether a cause of action in the underlying action falls within the scope of coverage, but rather whether the facts alleged demonstrate an injury covered by the policy. SAI argues that, under this standard, SGN's claims clearly arise out of an "advertising injury" as defined in the policy, thus triggering the duty to defend and indemnify. SAI argues that none of the policy exclusions apply. The motion is fully briefed (Dkt. ## 37, 40, 44).

In SAI's motion for summary judgment (Dkt. # 35), it argues first that the Court should exercise its discretion to refuse to consider State Farm's request for declaratory judgment. SAI alternatively argues that, if the Court does entertain State Farm's request for declaratory judgment, it should grant SAI's motion for summary judgment because the claims in the underlying state court action are covered by the trade dress infringement and advertising idea provisions of the definition of advertising injury, and that no exclusion bars coverage. State Farm responds (Dkt. # 41) that the allegations are not based on trade dress, despite the use of the term in the pleadings in the underlying action. Specifically, State Farm argues that the use of the name "Ludger's" in conjunction with offering catering services does not constitute trade dress, which generally relates to the look or image of a product. The motion is fully briefed (Dkt. ## 35, 41, 43).

I.

A thorough review of the summary judgment record demonstrates the following: Schulz was the principal owner and operator of the Black Forest Café, Inc. (BFC). Dkt. ## 37, at 8; 40, at 5. Prior to 2009, BFC consisted of (i) a bakery operated under the trade names "Ludger's Cakes" and/or "Ludger's Bakery" and/or "Ludger's Bavarian Cakery," and (ii) a catering and dining room business operated under the trade name "Ludger's Catering & Dining Room." Dkt. ## 35, at 6; 41, at 9; 37, at 8; 40, at 5. On October 29, 2009, BFC entered into a Purchase and Sale Agreement (PSA) with SGN, which provided "[BFC], desires to sell all of the Assets, Stock Inventory, and the business and goodwill of a portion of the business of [BFC] doing business as (d/b/a) Ludger's Catering & Dining Room (hereinafter collectively referred to as 'Ludger's Catering')." Dkt. ## 37, at 9; 40, at 5; 5-11, at 2. SAI was not (and is not) a party to the PSA. Dkt. ## 35, at 7; 41, at 11.

The terms of the PSA stated "[BFC] shall sell, convey, transfer and assign and deliver to the [SGN] all of the Assets and the right to operate in perpetuity and exclusively the catering and private dining room establishment of Ludger's Catering [& Dining Room]." Dkt. # 5-11, at 4. Specifically, BFC conveyed "the goodwill of the business, including the covenant not to compete in Section 2.06, and any and all trade marks, trade dress, contracts, licenses, and the exclusive right to continue operations of that portion of the business of [BFC] using the name 'Ludger's Catering & Dining Room', and the right to link to the website (www.ludgers.com), all of the foregoing are intended to continue in perpetuity . . . ." Dkt. # 5-11, at 4, 2. Section 2.06 states "[e]xcept as provided herein, each of [BFC] and Schulz understands, acknowledges and covenants that neither [BFC] nor Schulz shall own, operate, manage, or consult, directly or indirectly, in a business that competes with

Ludger's Catering [& Dining Room]." Dkt. # 5-11, at 5. Per the terms of the PSA, the non-compete term with BFC and Schulz expired on October 29, 2014. Dkt. # 5-11, at 6.

The PSA also included a licensing agreement. Dkt. # 5-13. In that agreement, BFC granted SGN "Licensor's rights in and to the Licensor Mark, an exclusive, fully paid up license, for a primary term of five (5) years beginning the date of Closing of the Purchase." Id. at 1. The "Licensor Mark" is defined as "Ludger's Catering and Dining Room."[1] Id. The licensing agreement states that, after five years, SGN would be granted all rights to "Ludger's Catering and Dining Room" exclusively and in perpetuity if no breach occurred. Id.

Approximately one year after the PSA and licensing agreement were executed, BFC transferred the trade name "Ludger's Cakes" to SAI. Dkt. ## 37, at 9; 40, at 6. At all relevant times herein, SAI was owned or co-owned by Allison Dickens, Schulz's stepdaughter. Dkt. ## 37, at 9; 40, at 6. Testimony indicates that, at the time of the trade name transfer, Allison Dickens was aware that BFC had sold the Ludger's Catering & Dining Room business. Dkt. ## 37, at 9; 40, at 6.

In April 2015, SGN and SAI exchanged emails regarding SAI's business practices relating to the provision of breakfast items. Dkt. # 5-15. In those exchanges, SGN noted the "Catering Menu" on SAI's website. Id. at 3. SGN expressed concern that the website reference was "confusing to [SGN's] clients." Id. As of November 30, 2018, SAI offered a "Catering Menu" on the"Ludger's Bavarian Cakery" website. Dkt. ## 37, at 10-11; 40, at 7. On December 7, 2018, counsel for SGN sent a letter to SAI and Schulz regarding "Infringement of the LUDGER's

---

[1] This Court notes that the licensing agreement grants SGN the license to "Ludger's Catering and Dining Room," but the PSA is an agreement for the purchase of "Ludger's Catering & Dining Room." Compare Dkt. # 5-11 with Dkt. # 5-13.

4

CATERING Trade Names, Tortious Interference with Existing and Prospective Contractual and Business Relationships, Unfair Competition and Violation of the Oklahoma Deceptive Trade Practices Act . . ." Dkt. #37-7, at 1. The letter stated that SAI's "provision of catering services in connection with the offering for sale of Ludger's Bavarian Cakery products and services has caused and is likely to cause consumer confusion in the future as to the source or sponsorship of Ludger's Bavarian Cakery's products and services." Dkt. #37-7, at 2. Further, the letter alleged that the "catering services (and advertisement thereof) . . infringe upon SGN's . . . trade names." Id. at 3. The letter stated that SAI "knowingly misrepresented that Ludger's Bavarian Cakery provides catering services as a part of [its] business in an effort to deceive the public and take advantage of the substantial goodwill that SGN has built since acquiring the LUDGER's CATERING trade names in 2009." Id.

On February 14, 2019, SGN filed the underlying state court action against SAI in the District Court of Tulsa County, Oklahoma. Dkt. #37-9. On May 29, 2019, SGN filed a Second Amended Petition (SAP), its latest statement of claims. In the SAP, SGN brings claims against SAI for tortious interference with existing and prospective business relationships (count I), violations of Oklahoma Deceptive Trade Practice Act (count II); and permanent injunctive relief (count III). Dkt. # 5-10, at 13-16. The SAP alleges, in relevant part:

> 30. In late November 2018, Sweet Appetit's LUDGER'S Bavarian Cakery website contained a "Catering" Menu listing "Breakfast Bundle" and "Lunch Bundles" with the "LUDGER'S" name repeatedly displayed.
>
> 31. Sweet Appetit's offering of "Breakfast Bundles" and "Lunch Bundles" with the "LUDGER'S" name repeatedly displayed, directly competes with SGN's catering services in association with the "LUDGER'S" name.

5

32. Sweet Appetit's offering of catering services, in association with the "LUDGER'S" name, infringe upon SGN's exclusive and perpetual right to operate the "catering and private dining room establishment of 'LUDGER's Catering.'"

\*      \*      \*

34. The Cease and Desist letter explained the use of "LUDGER'S" in association with catering services was SGN's exclusive and perpetual right, and the operation of another catering service in association with the "LUDGER'S" name infringed upon SGN's right.

\*      \*      \*

70. As a result of the Defendants' actions, SGN has suffered significant damages, including the loss of customers and damage to SGN's goodwill built-up since late 2009.

\*      \*      \*

74. The Defendants' [sic] offering of catering services (and any advertisement thereof), represents tortious interference with SGN's existing and prospective business and contractual relationships.

\*      \*      \*

76. The Defendants' intentional past and continued interference is malicious and wrongful, and such interference is neither justified, privileged, nor excusable.

77. The Defendants' improperly and unfairly used the "LUDGER'S" name and goodwill to obtain catering business from SGN's present and potential customers.

\*      \*      \*

84. The Sweet Appetit's LUDGER'S Bavarian Cakery website falls within the prohibitions causing confusion among current and potential customers of SGN.

85. With offering and performing catering services and the registration of the "LUDGER'S CATERING" trade name, the Defendants engaged in the deceptive trade practice to [sic] misappropriating SGN's rightful use of "LUDGER'S" in association with catering services.

\*      \*      \*

87. The Defendants have knowingly made misrepresentations in an effort to deceive, dilute, and injure SGN's substantial goodwill acquired since 2009, and to obtain advantage with the public and potential customers by providing catering services in association with the "LUDGER'S" name.

Dkt. # 5-10, at 6-15 (citations omitted).

Throughout the relevant period, SAI had commercial liability insurance coverage with State Farm. SAI was covered from September 15, 2011 to August 29, 2017, under Policy No. 96-BL-R081-7 (Dkt. ## 5-1 through 5-6), and from August 29, 2017 to August 29, 2020, under Policy No. 96-BSE946-7 (Dkt. ## 5-7 through 5-9). Dkt. ## 35, at 9; 41, at 17. Policy Number 96-BS-E946-7 extends coverage to the "insured" for "'personal and advertising injury' caused by an offense arising out of your business." Dkt. # 5-23, at 24. Policy Number 96-BS-E946-7 defines the term "personal and advertising injury" as "injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  a. False arrest, detention or imprisonment;

  b. Malicious prosecution;

  c. The wrongful eviction from, wrongful entry into, or invasion of the right of privacy, of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  e. Oral or written publication, in any manner of material that violates a person's right to privacy;

  f. The use of another's advertising idea in your "advertisement", or

  g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

Dkt. # 5-23, at 37.

On April 9, 2018, an amendment to Policy Number 96-BS-E946-7 modified the definition of "personal and advertising injury" to omit coverage for copyright infringement in an advertisement from section g. by striking "copyright." Dkt. # 5-24, at 4-5. The amendment also added a new provision, section h., which provided coverage for "[i]nfringement of another's copyright, patent, trademark, or trade secret." Id. at 5.

The Policy defines the term "advertisement" as follows:

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    a. Notices that are published include material placed on the internet or on similar electronic means of communication; and

    b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

Dkt. # 5-23, at 35.

The policy lists several exclusions to the coverage described above. Coverage is excluded for personal and advertising injuries

    a. Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

    \*    \*    \*

    e. Arising out of breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

    \*    \*    \*

    l. Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual

property rights do not include the use of another's advertising idea in your "advertisement"[;]

\* \* \*

m. Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers . . .

Dkt. # 5-23, at 29.

State Farm is currently defending SAI in the underlying action. Dkt. ## 35, at 22; 37, at 31.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Under Oklahoma law, commercial insurance contracts are interpreted "in accordance with principles applicable to all contracts." Mansur v. PFL Life Ins. Co., 589 F.3d 1315, 1319 (10th Cir. 2009). Contracts are "construed according to the plain meaning of [their] language," and, if unambiguous, the court "interprets the contract as a matter of law." Id. "When an insurance contract is susceptible of two meanings . . . words of inclusion are liberally construed in favor of the insured and words of exclusion strictly construed against the insurer." Phillips v. Estate of Greenfield, 859 P.2d 1101, 1104 (Okla.1993). Because a commercial insurance contract is a contract of adhesion, if the terms are unclear, or susceptible to more than one reasonable meaning, the contract will be construed in favor of the insured. Mansur, 589 F.3d at 1319; see also Western World Ins. Co. v. Markel American Ins. Co., 677 F.3d 1266, 1271 (10th Cir. 2012).

Generally, commercial insurance policies "contain[] two basic duties—the duty to defend and the duty to indemnify its insured." First Bank of Turley v. Fid. & Deposit Ins. Co. of Md., 928 P.2d 298, 302-03 (Okla. 1996). "The duty to defend is separate from, and broader than, the duty to indemnify, but the insurer's obligation is not unlimited. The defense duty is measured by the nature

and kinds of risks covered by the policy as well as by the reasonable expectations of the insured." Turley, 928 P.2d at 303-04 (footnotes omitted). In Oklahoma, "an insurer has a duty to defend if the facts raise the mere 'potential of liability.'" Automax Hyundai S., L.L.C. v. Zurich Am. Ins. Co., 720 F.3d 798, 805 (10th Cir. 2013) (citing Turley, 928 P.2d at 303). "To have the 'potential of liability,' the 'complaint [must] state a cause of action that gives rise to the possibility of a recovery under the policy; there need not be a probability of recovery.'" Idg, Inc. v. Cont'l Cas. Co., 275 F.3d 916, 920 (10th Cir. 2001) (quoting 7C Appleman, Insurance Law & Practice § 4683.01 at 67 (Berdal ed.1979)); see also Turley, 928 P.2d at 303 n.14 (same).

"The insurer's defense duty is determined on the basis of information gleaned from the petition (and other pleadings), from the insured and from other sources available to the insurer at the time the defense is demanded (or tendered) rather than by the outcome of the third-party action." Turley, 928 P.2d at 303-04; see Idg, 275 F.3d at 920; see also Above It All Roofing & Constr., Inc. v. Sec. Nat'l Ins. Co., 285 F. Supp. 3d 1224, 1241 (N.D. Okla. 2018). "[A]n insurer has a duty to defend even where the facts alleged intentional conduct because at trial the jury could have found the defendant guilty merely of negligence or other nonintentional conduct." Automax, 720 F.3d 798, 805 (citing Westport Ins. Corp. v. Napoli, Kaiser & Bern, 746 F. Supp. 2d 502, 508 (S.D.N.Y. 2010) (applying New York law); Gray v. Zurich Ins. Co., 419 P.2d 168, 177 (Cal. 1966)). "[T]he underlying facts, and not the allegations in the [underlying action's] complaint, are dispositive of the duty to defend." Id. "Nothing more is required to trigger the duty to defend" where "the facts indicate that [the insured] may have been negligent." Id. "[O]nce an insurer's duty to defend is triggered, it must defend all the claims in a lawsuit." Id. at 806. Although "[an insurer] must defend

[its insureds] in Oklahoma state court against all claims, it need only indemnify claims falling within the policy's scope." Utica Mut. Ins. Co. v. Voyles, 277 F. App'x 809, 816 (10th Cir. 2008).

"Under Oklahoma law, exclusionary provisions in insurance policies are construed narrowly and against the insurer." Utica, 277 F. App'x at 814 (citing Timmons v. Royal Globe Ins., 653 P.2d 907, 913 (Okla. 1982) ("[I]n Oklahoma, insurance contracts are construed so that words of exclusion are construed against the insurer and words of inclusion are construed in favor of the insured."); Cherot v. United States Fid. & Guar. Co., 264 F.2d 767, 769 (10th Cir. 1959) ("We are dealing here with an exclusionary clause. Such provisions are strictly construed.")). "[I]f a potential of liability under the policy exists after applying the exclusions at issue, [the insurer] retains its duty to defend." Id.

## IV.

In Oklahoma, an insurer has a duty to defend if the complaint "state[s] a cause of action that gives rise to the possibility of a recovery under the policy." Idg, 275 F.3d at 920. In the underlying state court action, the court determined that SGN's SAP states causes of action against SAI for tortious interference with existing and prospective business relationships, and for violations of Oklahoma Deceptive Trade Practice Act. See Order Denying Defendant's Motion to Dismiss, SGN foods, LLC, v. Sweet Appetit, Inc., No. CJ-2019-662 (Tulsa County Dist. Ct. Apr. 17, 2019). Therefore, the issue of whether the complaint states a claim against SAI is not before this Court. The inquiry here is whether the injurious actions alleged in support of the claims stated in state court fall

within the reasonable possibility of coverage under the policy's definition of "personal and advertising injury" and, if so, whether coverage is excluded.[2]

## A. Coverage

First, the parties contest whether the allegations in underlying state court action trigger coverage under the defined terms of the policy. The policy obligates State Farm to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies," and "to defend the insured against any 'suit' seeking those damages." Dkt. # 37-13, at 24. Specifically, the insurance applies to "'personal and advertising injury' caused by an offense arising out of [the insured's] business, but only if the offense was committed in the 'coverage territory' during the policy period." Dkt. # 37-13, at 24. The policy, as amended on April 9, 2018, states "'[p]ersonal and advertising injury' means injury . . . arising out of one or more of the following offenses: . . . f. The use of

---

[2] State Farm argues first that, in order to trigger the duty to defend or indemnify arising out of a personal and advertising injury, the insured must be "sued for one or more of the enumerated offenses listed in the policy." Dkt. #37, at 24. Citing Hanover Am. Ins. Co. v. Saul, 2013 WL 4542284, *6 (W.D. Okla. 2013), State Farm argues that because tortious interference with existing and prospective business relationships, violations of Oklahoma Deceptive Trade Practice Act, and actions for permanent injunction "are not enumerated within the definition of 'personal and advertising injury' . . . coverage . . . does not extend to the offenses asserted by SGN." Dkt. #37, at 24-25. Hanover merely states that the negligence theory asserted in the underlying action in that case was not covered because none of the enumerated torts in the policy were based on theories of negligence. State Farm's argument that the policy in this case provides coverage for enumerated causes of action only is contradicted by the many cases in which the duty to defend is determined based on the allegations in the complaint, rather than by the causes of action alleged. See, e.g., Automax, 720 F.3d at 805. This Court, following Tenth Circuit precedent, finds that the causes of action brought against the insured need not be listed in the policy in order to trigger the insurer's duty to defend where there is a possibility of liability, and thus the possibility of the duty to indemnify, under the policy. Instead, the Court must assess whether the pleadings allege an injury for which there is a possibility of recovery under the policy.

13

another's advertising idea in your 'advertisement'; g. Infringing upon another's trade dress or slogan in your 'advertisement'[;] or h. Infringement of another's copyright, patent, trademark, or trade secret." Dkt. # 5-24, at 4-5. Though the cause of action need not be expressly enumerated under the policy to trigger the duty to defend, the duty to defend exists only where the facts alleged create the possibility that the injurious conduct is covered by the policy and could possibly trigger the duty to indemnify. Automax, 720 F.3d 798, 805. In arguing whether the possibility of coverage exists, the parties dispute (i) whether the name "Ludger's" used in combination with a catering menu constitutes "trade dress," and (ii) whether the "Ludger's"-branded catering menu on SAI's website constitutes an "advertising idea." Neither "trade dress" nor "advertising idea" is defined in the policy. Further, the terms do not appear to be defined under Oklahoma law. Thus, in assessing whether there is an injury arising out of actions relating to "trade dress" or an "advertising idea," the Court examines other decisions discussing these terms.

The Supreme Court has stated trade dress "originally included only the packaging, or 'dressing,' of a product, but in recent years has been expanded by many Courts of Appeals to encompass the design of a product." Wal-Mart Stores, Inc. v. Samara Bros., 529 U.S. 205, 209 (2000). "[T]rade dress constitutes a 'symbol' or 'device' for purposes of the relevant sections, and we conclude likewise. 'Since human beings might use as a 'symbol' or 'device' almost anything at all that is capable of carrying meaning, this language, read literally, is not restrictive.'" Wal-Mart, 529 U.S. at 209-10 (quoting Qualitex Co. v. Jacobson Products Co., 514 U.S. 159, 162 (1995)). A brand's trade dress can include word marks and sales mechanisms. See, e.g., Sally Beauty Co. v. Beautyco, Inc., 304 F.3d 964, 977-78 (10th Cir. 2002) ("Sally Beauty's trade dress includes the mark 'Generic Value Products,' a product comparison to a salon brand product, and side-by-side

ingredients listing for the product and the comparable salon brand product. Taken together, a reasonable jury could conclude that these elements immediately convey the qualities and characteristics of the product, i.e., Generic Value Products is a comparable alternative to salon brand products."). A brand's trade dress can also include the look and feel of a menu (Vasquez v. Ybarra, 150 F. Supp. 2d 1157, 1175 (D. Kan. 2001)), or website (FC Online Mktg., Inc. v. Burke's Martial Arts, LLC, No. 14-CV-3685 SJF SIL, 2015 WL 4162757, at *9 (E.D.N.Y. July 8, 2015)).

The term "advertising idea" has also been construed broadly. Circuit courts have described an advertising idea as "an idea about the solicitation of business and customers" (Green Mach. Corp. v. Zurich-American Ins. Group, 313 F.3d 837, 839 (3d Cir. 2002)), as "ideas in connection with marketing and sales and for the purpose of gaining customers," (CAT Internet Servs., Inc. v. Providence Washington Ins. Co., 333 F.3d 138, 142 (3d Cir. 2003)), and as " an idea for calling public attention to a product or business, especially by proclaiming desirable qualities so as to increase sales or patronage" (American Simmental Ass'n v. Coregis Ins. Co., 282 F.3d 582, 587 (8th Cir. 2002) (citation omitted)). Under such broad definitions, courts "have concluded that a wide variety of concepts, methods, and activities related to calling the public's attention to a business, product, or service constitute advertising ideas." Holyoke Mut. Ins. Co. in Salem v. Vibram USA, Inc., 106 N.E.3d 572, 578 (Mass. 2018).

It is evident from the above that courts construe the terms "trade dress" and "advertising idea" broadly at the outset of litigation. Indeed, because policy ambiguity is to be construed in favor of the insured, more inclusive interpretations of undefined terms are warranted. Mansur, 589 F.3d at 1319; see also Western World, 677 F.3d at 1271. In this case, the Court finds that a reasonable jury could determine that the allegations in the complaint trigger liability under the policy under

either term. First, this Court finds it is possible that a reasonable jury could find that a well-known name such as "Ludger's," in combination with the sales method of online catering, could constitute "trade dress." Sally Beauty, 304 F.3d at 977-78. The appearance of the name "Ludger's" at the top of a catering order form could be perceived as a specific sales and branding tactic that a jury could find belongs to Ludger's Catering & Dining Room only. Second, this Court finds that a reasonable jury could find that advertising breakfast and lunch via an online catering menu in association with the non-trademarked name of "Ludger's" could constitute an "advertising idea."[3] Because the pleadings demonstrate that a personal and advertising injury could arise from conduct covered by two policy provisions, opening the door to the possibility of liability for those acts, the Court finds that State Farm has a duty to continue to defend SAI in the underlying state court action.

For the purposes of determining whether the duty to defend is triggered, the Court need only determine whether the acts or conduct alleged in the complaint could reasonably be interpreted to be covered under the policy's defined terms considering the reasonable expectations of the insured. Turley, 928 P.2d at 303-04. Here, the state judge has found the claims sufficiently stated to survive a motion to dismiss. Because this Court finds there is reasonable possibility of coverage arising out of a personal or advertising injury, the duty to defend is triggered. However, without knowing how a jury would categorize this injury–i.e., without a determination as to whether the injury arises out

---

[3]  This Court finds that a reasonable jury could find that the menu constitutes an "advertisement" under the policy definition. The policy states an "[a]dvertisement" is "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." The definition specifically states that "that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement." Dkt. # 5-23, at 35. This Court finds that a catering menu advertising products could reasonably be considered an "advertisement" under this definition.

of infringement upon another's trade dress or out of the use of another's "advertising idea"–the Court cannot make a legal determination of coverage. As a result, the Court cannot declare whether there is a duty to indemnify SAI for any judgment against it for SGN's claims in the state court action.

### B. Exclusions

The parties also contest whether the alleged injuries of SGN are within the scope of any of the policy exclusions. The Court finds that consideration of these exclusions is premature. The applicability of the exclusions will hinge on a jury's determination of the facts in the underlying state court action. As a result, it is unknown whether exclusions 17a, 17e, 17l, and 17m apply, given the uncertainty as to which claim(s) in the underlying state court action will go to a jury, and what a jury will find. The jury verdicts will be determinative of whether there is coverage for any liability that is not excluded under the policy.

State Farm specifically argues that "[r]egardless of the legal theory upon which SGN has asserted its claims, and regardless of whether those claims are cast as 'trade dress' or trademark, SGN's lawsuit in the underlying action is premised upon SAI's use of the 'LUDGER'S' name. Coverage for the claims is excluded pursuant to the plain language of Exclusion 17m."[4] Dkt. # 41, at 23. The Court disagrees. Although the exclusion under 17m may not depend on a determination as to the legal theory under which the claims arise (which is not a foregone conclusion), there is a reasonable possibility that exclusion 17m will not apply for other reasons.

---

[4] In support of this argument, State Farm cites State Farm Fire and Casualty Co. v. Prescott, 2019 WL 1840906 (D. Haw. 2019); however, that case is distinguishable. In Prescott, both plaintiff and defendant utilized the same name for their respective businesses, but plaintiff (and only plaintiff) had legal rights to use that exact trade name. In this case, both businesses arguably have rights to the word "Ludger's." SGN does not have exclusive use of that word.

17

Exclusion 17m. bars coverage, and thus relieves State Farm of the duty to defend and to indemnify, where the injuries arise "out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers . . ." Dkt. # 5-23, at 29. Therefore, for exclusion 17m to apply, State Farm must show the injury arises out of the "unauthorized use" of "another's name or product." "[E]xclusionary provisions in insurance policies are construed narrowly and against the insurer" (Utica, 277 F. App'x at 814), and where they are "susceptible to more than one reasonable meaning, the contract will be construed in favor of the insured." Mansur, 589 F.3d at 1319; see also Western World, 677 F.3d at 1271. Therefore, to demonstrate this exclusion applies as a matter of law, State Farm must show that its interpretation of the exclusion is the only reasonable one. The Court finds that State Farm has not made that showing. The Court notes that, at a minimum, questions exist as to whether the use of the name "Ludger's" could be categorized as "another's name," whether the use of the word "Ludger's" is "unauthorized," and whether SGN's catering services could constitute a "product." Given the ambiguity as to exclusion 17m–regardless of the legal theories underlying the claims in the state court action–the Court finds State Farm has not shown that 17m is applicable as a matter of law at this time. Given the unresolved issues in the underlying state court action, there is no way for this court to pre-judge whether any policy exclusion applies. Accordingly, the Court finds that State Farm must continue to defend SAI under the terms and conditions under which it is currently defending it, and denies the motion for summary judgment as to the applicability of policy exclusions.

**IT IS THEREFORE ORDERED** that defendant SAI's motion for summary judgment (Dkt. # 35) is **granted in part** as to the duty to defend, and **denied in part** as to the duty to indemnify. Plaintiff's motion for summary judgment (Dkt. # 37) is **denied.**

**DATED** this 9th day of November, 2020.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE